**No. 12-14611-BB**

## IN THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT

CSX TRANSPORTATION, INC.,

Plaintiff-Appellant,

v.

ALABAMA DEPARTMENT OF REVENUE
and JULIE P. MAGEE,

Commissioner of the Alabama Department of Revenue,
Defendants-Appellees.

## ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ALABAMA

## BRIEF *AMICUS CURIAE* OF ASSOCIATION OF AMERICAN RAILROADS IN SUPPORT OF APPELLANT

LOUIS P. WARCHOT
JANET L. BARTELMAY
ASSOCIATION OF AMERICAN
RAILROADS
425 Third Street, S.W.
Washington, DC 20024
Telephone: 202.639.2100

BETTY JO CHRISTIAN
TIMOTHY M. WALSH
THEODORE N. NEMEROFF
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue N.W.
Washington, DC 20036
Telephone: 202.429.8113

*Counsel for Amicus Curiae
Association of American
Railroads*

OCTOBER 23, 2012

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Fed. R. App. P. 26.1 and Eleventh Circuit Rules 26.1.-1- 26.1.-3, *Amicus Curiae* Association of American Railroads ("AAR") hereby certifies that the following individuals or entities have an interest in the outcome of this case:

1.   Alabama Department of Revenue, Appellee

2.   Association of American Railroads ("AAR"), *Amicus Curiae*. AAR is a non-profit corporation that has no stock owned by any other entity, and has no parent companies or affiliates. AAR has two for-profit subsidiaries: Transportation Technology Services, Inc. and Railinc Corporation, both of which are Delaware corporations and neither of which is publicly traded.

3.   Baker, Donelson, Bearman, Caldwell & Berkowitz, PC, attorneys for Appellant

4.   Bartelmay, Janet L., attorney for AAR

5.   Christian, Betty Jo, attorney for AAR

6.   CSXT, a wholly-owned subsidiary of CSX Corporation, Appellant. CSX Corporation's stock is publicly traded under the ticker symbol CSX.

7.    Davis, Marquita F., Director of Finance, State of Alabama

8.    Goodwin, Stephen D., attorney for Appellant

9.    Hinton, J. Forrest, attorney for Appellant

10.    Kallon, the Honorable Abdul, trial judge

11.    Maddox, W. Keith, attorney for Appellee

12.    Magee, Julie, in her official capacity as Commissioner of the Alabama
Department of Revenue, Appellee.

13.    McBride, James W., attorney for Appellant

14.    McNeill, Margaret Johnson, attorney for Appellee

15.    Nemeroff, Theodore N., attorney for AAR

16.    Steptoe & Johnson, LLP, attorneys for AAR

17.    Strange, Luther, Attorney General, State of Alabama

18.    Walsh, Timothy M., attorney for AAR

19.    Warchot, Louis P., attorney for AAR

By:    _____
Counsel for *Amicus Curiae*
Association of American Railroads

October 23, 2012

## TABLE OF CONTENTS

Page

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE
  DISCLOSURE STATEMENT ................................................................. C-1

TABLE OF CONTENTS ....................................................................................... i

I.  INTEREST OF *AMICUS CURIAE* ............................................... 1

II.  STATEMENT OF ISSUES .......................................................... 3

III.  SUMMARY OF ARGUMENT ..................................................... 4

IV.  ARGUMENT ................................................................................ 6

 A. ONLY THE CHALLENGED TAX CAN BE CONSIDERED, BUT IN
  ANY EVENT THE MOTOR CARRIER FUEL EXCISE TAX RELIED
  UPON BELOW IS NOT COMPARABLE TO THE SALES AND USE TAX
  ON RAILROAD DIESEL FUEL. ...................................................... 7

  1. The Motor Fuel Excise Tax Has Always Been a Charge for the Use
   and Maintenance of Public Roadways, Subject to Special Federal
   Mandates and Other Rules. ............................................................. 10

  2. Alabama's Motor Fuel Tax and Its Sales and Use Tax on Railroad
   Diesel Fuel Do Not Impose the Same Costs and Instead Vary
   Independently Based on Market Conditions. .................................. 16

  3. Because Alabama's Motor Fuel Tax Cannot Justify  Discrimination
   Against Railroads Under the Diesel Fuel Sales and Use Tax, the Latter
   Tax Must Be Enjoined. ................................................................... 20

 B. ALABAMA'S SALES AND USE TAX EXEMPTIONS FOR
  INTERSTATE WATER CARRIERS VIOLATE SECTION 306 ON THEIR
  FACE IRRESPECTIVE OF MOTOR CARRIERS. ...................................... 22

V.  CONCLUSION ........................................................................... 29

CERTIFICATE OF COMPLIANCE .................................................................. 30

CERTIFICATE OF SERVICE ............................................................................ 31

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Arizona Pub. Serv. Co. v. Snead*,
441 U.S. 141 (1979) ........................................................................................ 8, 9

*Burlington N. R.R. v. City of Superior, Wisc.*,
932 F.2d 1185 (7th Cir. 1991) ............................................................................ 8

*Burlington N. R.R. v. Oklahoma Tax Comm'n*,
481 U.S. 454 (1987) ................................................................................ 2, 6, 19

*Christian Legal Soc'y Chapter v. Martinez*,
130 S. Ct. 2971 (2010) ..................................................................................... 23

*Complete Auto Transit, Inc. v. Brady,*
430 U.S. 274 (1977) ......................................................................................... 27

*CSX Transp., Inc. v. Alabama Dep't of Revenue*,
562 U.S. __, 131 S.Ct. 1101 (2011) ........................................................... passim

*CSX Transp., Inc. v. Alabama Dep't of Revenue*,
No. 08-0655 (N.D. Ala. Dec. 16, 2008), *aff'd*, 350 F.App'x 318 (11th
Cir. 2009), *vacated*, 562 U.S. __, 131 S.Ct. 1101 (2011) ..................................... 4

*CSX Transp., Inc. v. Board of Pub. Works,*
138 F.3d 537 (4th Cir. 1998) ............................................................................ 25

*CSX Transp., Inc. v. Georgia Board of Equalization,*
552 U.S. 9 (2007) ........................................................................................... 6, 7

*Dep't of Revenue of Oregon* v. *ACF Indus., Inc.*,
510 U.S. 332 (1994) ...................................................................................... 6, 24

*General Am. Transp. Corp. v. Kentucky*,
791 F.2d 38 (6th Cir. 1986) ................................................................................ 8

*Kansas City S. Ry. v. McNamara*,
817 F.2d 368 (5th Cir. 1987) .............................................................................. 8

– ii –

*South Cent. Timber Dev. v. Wunnicke*,
467 U.S. 82 (1984) ............................................................................................. 26

*Southern Pac. Co. v. Arizona*,
325 U.S. 761 (1945) ........................................................................................... 26

*Southern Waste Sys., LLC v. City of Delray Beach*,
420 F.3d 1288 (11th Cir. 2005) ......................................................................... 26

*Union Pac. R.R. v. Minn. Dep't of Revenue*,
507 F.3d 693 (8th Cir. 2007) ......................................................................... 8, 28

*United Haulers Ass'n v. Oneida-Herkimer Solid Waste Mgmt. Auth.*,
550 U.S. 330 (2007) ........................................................................................... 26

## ACTS

Act No. 18, 1939 Gen. Laws (and Joint Resolutions) of the Leg. of Ala. 16
(Feb. 8, 1939) ..................................................................................................... 12

Act No. 67, 1939 Gen. Laws (and Joint Resolutions) of the Leg. of Ala. 96
(Feb. 28, 1939) ................................................................................................... 12

Act No. 194, sec. 156, 1935 Gen. Laws (and Joint Resolutions) of the Leg.
of Ala. 508 (July 10, 1935) ................................................................................ 12

Hayden-Cartwright Act, Pub. Law No. 73-393, 48 Stat. 993 (1934) .................... 11

Railroad Revitalization and Regulatory Reform Act, Pub. Law No. 94-210, §
306, 90 Stat. 148 (Feb. 5, 1976) .................................................................. passim

Tax Reform Act of 1976, Pub. L. No. 94-455, 90 Stat. 1914 (1976) ....................... 9

## STATUTES

35 Ill. Comp. Stat. Ann. 105/3 ............................................................................... 21

35 Ill. Comp. Stat. Ann. 120/2-10 .......................................................................... 21

35 Ill. Comp. Stat. Ann. 505/2 ............................................................................... 21

49 U.S.C. § 11501 ..................................................................................................... 2

49 U.S.C. § 11501(b) ........................................................................................... 2, 25

49 U.S.C. § 11501(b)(4) ...................................................................................... 6, 19

49 U.S.C. § 11501(c) ........................................................................................ 20, 25

49 U.S.C. § 31705 ................................................................................................. 14

Ala. Code § 40-17-2(1) ......................................................................................... 11

Ala. Code § 40-17-13 ........................................................................................... 11

Ala. Code § 40-17-146 ......................................................................................... 11

Ala. Code § 40-17-220(e) ..................................................................................... 11

Ala. Code § 40-17-222 ......................................................................................... 11

Ala. Code § 40-17-273 .................................................................................... 14, 15

Ala. Code § 40-17-274 ......................................................................................... 15

Ala. Code § 40-23-35 ........................................................................................... 15

Ala. Code § 40-23-85 ........................................................................................... 15

Cal. Rev. & Tax. § 6051 ....................................................................................... 21

Cal. Rev. & Tax. §§ 60050 *et seq.* ...................................................................... 21

N.Y. Tax Law §§ 282-a to 282-c .......................................................................... 21

N.Y. Tax Law § 523 .............................................................................................. 21

N.Y. Tax Law § 1105 ............................................................................................ 21

N.Y. Tax Law § 1110 ............................................................................................ 21

**LEGISLATIVE MATERIALS**

S. Rep. No. 87-445 (1st Sess. 1961) ...................................................................... 13

**BOOKS AND ARTICLES**

2 K. Broun, McCormick on Evidence § 254 (6th ed. 2006) ................................... 23

Congressional Budget Office Background Paper, *Highway Assistance Programs: an Historical Perspective* (Feb. 1978) at 18-23 .............................. 13

Jonathan Williams, *Paying at the Pump: Gasoline Taxes in America* ................... 10

**INTERNET**

http://www.aar.org/About-Us/Our-Members.aspx .................................................... 1

Tax Foundation Background Paper No. 56, at 3 tbl. 1 (Oct. 2007), *available at* http://taxfoundation.org/sites/taxfoundation.org/files/docs/bp56%2520final.pdf................................................................................................................... 10

Tuscaloosa News, Mar. 2, 1939, *available at* http://news.google.com/newspapers?nid=1817&dat=19390302&id=ZOc-AAAAIBAJ&sjid=KU0MAAAAIBAJ&pg=4314,2787848............................ 11

U.S. Energy Information Administration, *Alabama No. 2 Distillate Retail Sales by Refiners (Dollars per Gallon)*, *available at* http://www.eia.gov/dnav/pet/hist/LeafHandler.ashx?n=PET&s=EMA_EP D2_PWG_SAL_DPG&f=M (last visited Oct. 22, 2012) .................................. 17

**OTHER AUTHORITIES**

*Highway Infrastructure: Interstate Physical Conditions Have Improved, but Congestion and Other Pressures Continue*, Report to the Committee on Transportation and Infrastructure, House of Representatives, GAO-02-571 (May 2002)................................................................................................. 21

International Fuel Tax Agreement, Arts. I, IX & X................................................ 14

**BRIEF OF *AMICUS CURIAE***
**ASSOCIATION OF AMERICAN RAILROADS**
**IN SUPPORT OF APPELLANT**

## I.    INTEREST OF *AMICUS CURIAE*

The Association of American Railroads ("AAR") is a non-profit trade association of interstate rail carriers.[1]  AAR represents its members—which include major freight rail systems, passenger and commuter rail networks, regional railroads and short lines—before courts, agencies and the Congress in matters of common concern.[2]

AAR's members carry almost all of the Nation's rail freight and employ almost all its railroad workers.  They move massive volumes of raw materials and products that generate economic activity at both origin and destination.

Interstate transportation of commodities by rail—from, to and across multiple states—is critical to the Nation's economy.  Railroads were one of the first instrumentalities of interstate commerce and continue to be one of the most

---

[1] Petitioner and Respondents have consented to the filing of this brief.  No counsel for a party authored this brief in whole or in part.  The only monetary contribution intended to fund the preparation or submission of this brief made by a party or its counsel is through a special assessment on the AAR members that are Class I Railroads, of which Appellant CSX Transportation, Inc. ("CSXT") is one.  No person other than the *amicus curiae*, its members, or its counsel made a monetary contribution intended to fund this brief.

[2] A list of AAR's members and affiliate members is available at http://www.aar.org/About-Us/Our-Members.aspx (last visited Oct. 22, 2012).

important.  They facilitate enormous productive activity in the industrial, mining and consumer goods sectors, among others.  And economic growth throughout the Nation depends on the railroads' ability to invest in expanded and improved facilities.

The rail industry is subject to a variety of state and local taxes, which generate huge public revenues.  The seven Class I railroads alone pay state and local taxes of more than $1 billion annually.

Congress enacted Section 306 of the Railroad Revitalization and Regulatory Reform Act of 1976 (the "4–R Act") to ensure that the taxes states impose on these vital instrumentalities of nationwide commerce are not discriminatory—as they often had been in the past.[3]  The statute bans four specified "acts" of state and local taxation that "unreasonably burden and discriminate against interstate commerce." 49 U.S.C. § 11501(b).  The first three relate solely to property taxes.  *Id.* § 11501(b)(1)-(3).  The fourth, at issue here, prohibits "another tax that discriminates against a rail carrier."  *Id.* § 11501(b)(4).

AAR and its members were deeply involved in Section 306's enactment.  It is critical for them—as well as for many connected smaller railroads and for

_____

[3] Pub. Law No. 94-210, § 306, 90 Stat. 148 (Feb. 5, 1976), now codified at 49 U.S.C. § 11501 (2006); recodification was not intended to effect any substantive change. *Burlington N. R.R. v. Oklahoma Tax Comm'n*, 481 U.S. 454, 457 n.1 (1987) ("*Oklahoma Tax Comm'n*").

customers throughout the Nation who are reliant on rail service—that this statute

continue to serve the goal Congress intended: to eliminate state tax discrimination

against railroads in *any* form.

Congress laid down these bright-line rules against discrimination over thirty

years ago, in an affirmative exercise of its power under the Commerce Clause. But

states and localities—for whom it is far easier to tax out-of-state railroads than

local residents and businesses—have persisted in efforts to evade them. The

railroad industry consequently has had to remain vigilant in challenging judicial

interpretations of Section 306 that depart from the clear requirements of its text.

The decision below does precisely that, undercutting the structural protections

Congress designed this important statute to erect for the benefit of the entire

national economy. AAR accordingly submits this brief *amicus curiae* in support of

Appellant.

## II.    STATEMENT OF ISSUES

The issues presented are:

1. Whether the District Court erred when it considered taxes other than the

   challenged Alabama sales and use tax on diesel fuel in determining

   whether the challenged tax discriminates against railroads in violation of

   Section 306.

2.  Whether the District Court erred when it treated Alabama's excise tax on motor carrier fuel as comparable to the challenged sales and use tax on railroad diesel fuel.

3.  Whether the District Court erred in holding that the Alabama sales and use tax on diesel fuel did not discriminate against railroads in violation of Section 306 even though competing interstate water carriers are exempted from that tax.

## III.  SUMMARY OF ARGUMENT

Alabama's imposition of a diesel fuel sales and use tax on interstate railroads while exempting interstate motor carriers and interstate water carriers from that tax is again before this Court in the wake of *CSX Transp., Inc. v. Alabama Dep't of Revenue*, 562 U.S. __, 131 S.Ct. 1101 (2011) ("*Alabama DOR*"), and a second round of proceedings before the Northern District of Alabama.  In the first round, the District Court dismissed the complaint, this Court affirmed, and the Supreme Court reversed.[4]  On remand, the District Court (although a different judge) again ruled for the state.  *See* Memorandum Opinion

_____

[4] *CSX Transp., Inc. v. Alabama Dep't of Revenue*, No. 08-0655 (N.D. Ala. Dec. 16, 2008), *aff'd*, 350 F.App'x 318 (11th Cir. 2009), *vacated*, 562 U.S. __, 131 S.Ct. 1101 (2011).

– 4 –

("Opinion") (ECF No. 71), No. 08-0655, 2012 U.S. LEXIS 120473 (N.D. Ala. Aug. 24, 2012).

The new grounds relied upon below have no greater merit than those the Supreme Court crisply rejected.  The District Court's arguments ignore the text of the statute, the stipulated facts and the clear holdings of multiple other Courts of Appeals.

Specifically, the District Court departed from settled precedent—established by multiple Courts of Appeals—in looking beyond the challenged Alabama sales and use tax to find some offset for its facial discrimination in other, very different fuel taxes paid by motor carriers.  By doing so, the court below invited a completely unwarranted circuit conflict on that issue.  Viewed properly, the Alabama sales and use tax clearly discriminates against interstate railroads vis-à-vis their motor carrier competitors, which without more violates Section 306.

The District Court compounded that error in its treatment of competing water carriers.  It impermissibly ignored the parties' stipulation that interstate water carriers are a principal competitor of CSXT in Alabama, which—because those water carriers are exempt from the sales and use tax—is an independent violation of Section 306.  And the lower court's alternative rationale for ignoring water carrier discrimination was based on fundamental misunderstandings of both the relief Congress provided in Section 306 and the difference between that

– 5 –

affirmative exercise of the Commerce Power and the effect of the "dormant" Commerce Clause.

## IV.    ARGUMENT

Congress enacted Section 306 to eliminate both existing and future state tax discrimination against interstate railroads.  It did not stop at banning the property tax discrimination that historically had been the most common vice and is dealt with in subsections (b)(1)-(3).  Congress went on to add subsection (b)(4)—a broadly-worded catch-all banning "another tax that discriminates against a rail carrier"—to prevent states from using other types of taxes to shift tax burdens onto out-of-state railroads.  49 U.S.C. § 11501(b)(4); *see also Alabama DOR,* 131 S.Ct. at 1112 ("After all, the very purpose of a catch-all provision like subsection (b)(4) is to avoid the necessity of listing each matter (here, each kind of tax discrimination) falling within it.").

In the last twenty-five years, Section 306 has come before the Supreme Court four times.  *Alabama DOR*, 131 S.Ct. 1101; *CSX Transp., Inc. v. Georgia Board of Equalization,* 552 U.S. 9 (2007); *Dep't of Revenue of Oregon* v. *ACF Indus., Inc.*, 510 U.S. 332 (1994); *Oklahoma Tax Comm'n*, 481 U.S. 454.  That not only manifests the national importance of the protections the statute mandates for

interstate rail commerce but also reflects the extensive experience Courts of

Appeals and District Courts have had in applying the statutory terms.

That precedent has forged a number of principles governing cases brought

under Section 306, one of which is of critical importance here because the court

below refused to follow it: that the statutory test of discrimination must be applied

based solely on the challenged tax, which cannot be justified by looking at other

taxes paid by the railroads' competitors. *See* Brief of Appellant ("CSXT Br.") at

19-22. CSXT has explained in detail how those principles developed, how the

courts uniformly apply them and why the grounds upon which the District Court

here purported to ignore them have no merit. *See id.* at 22-33. AAR will not

reiterate CSXT's compelling arguments. It does, however, want to highlight

several points that should assist this Court's analysis and that make reversal of the

decision below even more imperative.

## A.    ONLY THE CHALLENGED TAX CAN BE CONSIDERED, BUT IN ANY EVENT THE MOTOR CARRIER FUEL EXCISE TAX RELIED UPON BELOW IS NOT COMPARABLE TO THE SALES AND USE TAX ON RAILROAD DIESEL FUEL.

The Courts of Appeals have repeatedly held that a tax imposed on railroads

but not other members of the comparison class cannot be justified by reference to

other taxes on those competitors. *See* CSXT Br. at 19-22. That has been the case

whether the purported justification is a single allegedly comparable tax or the

– 7 –

state's entire tax scheme. *Id.; see also, e.g., Union Pac. R.R. v. Minn. Dep't of Revenue*, 507 F.3d 693, 695 (8th Cir. 2007); *Burlington N. R.R. v. City of Superior, Wisc.*, 932 F.2d 1185, 1186-88 (7th Cir. 1991); *Kansas City S. Ry. v. McNamara*, 817 F.2d 368, 376-79 (5th Cir. 1987); *General Am. Transp. Corp. v. Kentucky*, 791 F.2d 38, 40-42 (6th Cir. 1986).

The court below refused to follow that uniform precedent, seeking to distinguish the clear decisions of the Fifth and Eighth Circuits as well as several district courts. *See* Opinion at 14-19. CSXT has detailed why those decisions cannot be distinguished but instead strictly limit the analysis to the challenged tax. *See* CSXT Br. at 22-36.

As CSXT explains, the District Court's effort to distinguish *Arizona Pub. Serv. Co. v. Snead*, 441 U.S. 141 (1979), was particularly misguided. *See* CSXT Br. at 32-33. Two Courts of Appeals have cited *Snead* in limiting Section 306 cases to the specific challenged tax. *Id.* at 31. Those courts knew what they were doing.

Both the federal statute in *Snead* and Section 306(b)(4) prohibit discrimination created by the challenged tax. In *Snead*, only a tax on the generation or transmission of electricity could be challenged. *See* 441 U.S. at 146. Under Section 306(b)(4), "another tax"—that is, a tax in addition to the property taxes dealt with in subsections (1)-(3)—can be challenged; the controlling text

– 8 –

prior to recodification makes this even more clear, prohibiting "the imposition of 'any other tax' that discriminates against a railroad." *Alabama DOR*, 131 S.Ct. at 1107 n.6 (internal citation omitted).

In either case, it is a tax—the challenged tax—that cannot discriminate, and in neither case did Congress say courts could look beyond that specific challenged tax to determine whether it is discriminatory. In both cases, Congress could have prohibited discrimination based upon "the entire tax structure of the State," *Snead*, 441 U.S. at 150, but did not. Instead, it enacted prohibitions that operate against and strictly focus on "the tax *itself*." *Id.* (emphasis in original). The fact that Section 306 and the statute at issue in *Snead* were enacted the same year underscores that this was "the expressed intent of Congress," *id.,* in both cases.[5] The text of Section 306 simply does not permit the inquiry into allegedly "comparable" taxes that the court below decided to undertake here.

But even if other taxes could be considered, they would need to be closely comparable to the tax under review, which for a number of reasons the Alabama motor fuel excise tax cited by the District Court demonstrably is not. The court below asserted that the motor carriers' excise tax is comparable to the railroads'

---

[5] The *Snead* statute was part of the Tax Reform Act of 1976, Pub. L. No. 94-455, 90 Stat. 1914 (1976). *Snead,* 441 U.S. at 146 (citing 90 Stat. 1914). The same Congress enacted Section 306 in the 4-R Act. *See Alabama DOR*, 131 S.Ct. at 1105 (citing 90 Stat. 33).

sales and use tax in terms of nature and amount.  *See* Opinion at 22-25.  In fact, it is not comparable on either count.

### 1.    The Motor Fuel Excise Tax Has Always Been a Charge for the Use and Maintenance of Public Roadways, Subject to Special Federal Mandates and Other Rules.

Fuel excise taxes have a distinct history and character—and are subject to special rules under an interstate compact—that make them a very different animal from the sales and use tax on diesel fuel.  States have traditionally raised the revenue needed to construct and maintain roads by collecting charges from those who use those roads.  In the horse-and-wagon era, this typically took the form of tolls collected at each principal roadway and used to maintain that particular road.  With the advent of automotive vehicles, a new approach was found:  the "motor fuel tax."

Instead of relying on toll collectors, states required every seller of gasoline and other automotive fuels to collect this tax at the point of sale and remit it to the state, which dedicates the revenue to road construction and maintenance.  Oregon led the way in 1919, and within a decade every state in the union (including Alabama) had adopted a motor fuel tax.[6]

------

[6] *See* Jonathan Williams, *Paying at the Pump: Gasoline Taxes in America*, Tax Foundation Background Paper No. 56, at 3 tbl. 1 (Oct. 2007), *available at* http://taxfoundation.org/sites/taxfoundation.org/files/docs/bp56%2520final.pdf (last visited Oct. 22, 2012).

In 1934, Congress passed the Hayden-Cartwright Act, Pub. Law No. 73-393, 48 Stat. 993 (1934), which required states to apply the proceeds of motor fuel taxes solely to "the construction, improvement or maintenance of highways," at least to the extent provided by current laws, or risk the loss of federal aid for highway construction. *Id.* § 12. This "benefit concept"—that those who use the roads and benefit from them should pay for them—thus became firmly embedded and continues to be the underpinning of both state and federal motor fuel tax programs.[7]

Alabama's Motor Fuel Tax, first enacted in 1923, follows the classic user charge or benefits tax pattern. Under Alabama's present motor fuel tax, motor carriers pay a total state tax of 19 cents per gallon on diesel fuel. *See* Ala. Code § 40-17-2(1) (13 cents per gallon) and Ala. Code § 40-17-220(e) (6 cents per gallon). The proceeds of the tax are dedicated exclusively to the construction, repair and maintenance of the state's highways and roads. *See* Ala. Code § 40-17-13; Ala. Code § 40-17-146; Ala. Code § 40-17-222.

---

[7] In 1939, it was reported that except for the first five months after its original enactment in 1923, the proceeds of Alabama's fuel tax had all "gone into the construction and improvement of public roads and bridges." *See The Gasoline Tax in Alabama*, Tuscaloosa News, Mar. 2, 1939, *available at* http://news.google.com/newspapers?nid=1817&dat=19390302&id=ZOc-AAAAIBAJ&sjid=KU0MAAAAIBAJ&pg=4314,2787848 (last visited Oct. 22, 2012).

In addition to the user charges imposed by the Motor Fuel Tax, Alabama since at least 1939 has also had a sales and use tax, applicable to virtually all tangible personal property. The current rate of the state sales and use tax is 4% of the sales price, and each local jurisdiction is authorized to impose its own sales and use tax up to a maximum of 4%. *See* Agreed Facts (ECF No. 63) ¶¶ 8, 16.

The sales and use tax is a classic state tax, designed to raise revenue that the state can use for whatever purpose it deems appropriate. Diesel fuel is not mentioned in the sales and use tax statute, but Alabama has assessed that tax against diesel fuel used by railroads simply because it falls within the general category of items subject to the tax and is not the object of any specific exemption. Diesel fuel used by motor carriers is, however, exempt from the sales and use tax by virtue of the exemption for fuel that is "otherwise taxed," which includes diesel fuel subject to the motor carrier fuel tax.[8]

---

[8] Alabama's different tax treatment of motor carriers and railroads appears to be an historical artifact. Fuel used by motor carriers to operate trucks and fuel used by railroads to operate locomotives were *both* exempt from the sales and use taxes as originally enacted. *See* Act No. 18, 1939 Gen. Laws (and Joint Resolutions) of the Leg. of Ala. ("Gen. Laws") 16 (Feb. 8, 1939) (sales tax); Act No. 67, 1939 Gen. Laws 96 (Feb. 28, 1939) (use tax). Gasoline used by motor carriers—at the time defined to include "other liquid motor fuels ... commonly used in internal combustion engines," Act No. 194, sec. 156, 1935 Gen. Laws 508 (July 10, 1935) (motor fuel tax)—was exempt because it was "otherwise taxed" under the Motor Fuel Tax, Act No. 18, sec. V(c), Act No. 67, sec. III(e). The sales and use tax statutes also specifically exempted "sales of coal or coke ... for the generation of motive power for transportation." Act No. 18, sec. V(k); Act no. 67, sec. III(m). Coal was used at that time by railroads to fuel locomotives. When

The fact that the fuel taxes levied on motor carriers by states such as

Alabama are essentially user charges has long been recognized by transportation

experts. For example, the 1961 "Doyle Report" issued by the U.S. Senate, which

first recommended the enactment of a statute prohibiting state tax discrimination

against railroads, repeatedly described the motor fuel taxes levied by the states as

"user charges on Government provided way" and "user charges imposed on

competitive carriers [*i.e.,* motor carriers] for the use of other 'highways of

commerce.'"[9]  Indeed, the benefits to the motor carrier industry flowing from taxes

on diesel fuel have recently been recognized by the American Trucking

---

both railroads and motor carriers switched to diesel fuel, motor carriers continued
to be exempt from the sales and use tax because the language of the Motor Fuel
Tax was broad enough to cover diesel fuel. However, the "coal or coke"
exemption was too narrow to cover diesel fuel, and no separate exemption was
added to the statute for the railroads' new fuel, so the diesel fuel used by the
railroads became subject to the tax.

[9] *See* Special Study Group in Transportation Policies in the United States,
Report of the Committee on Commerce, United States Senate, S. Rep. No. 87-445,
at 449-50 (1st Sess. 1961) (colloquially, the "Doyle Report"); *see also id.* at 185-
186 (describing "state highway user taxes," including "motor fuel taxes").  More
recently, the Congressional Budget Office has described state taxes devoted to
highways in the same terms.  Congressional Budget Office Background Paper,
*Highway Assistance Programs: an Historical Perspective* (Feb. 1978) at 18-23
(Linkage of User Taxes); Congressional Budget Office (Dec. 1982) at 19-20,
*Financial Options for the Highway Trust Fund* ("most states finance their share of
the cost [of federal highway programs] through their own road user taxes, which
are often paid into state trust funds dedicated to road programs").

– 13 –

Associations ("ATA"), which recently *supported* an increase in federal diesel fuel taxes, provided those funds were dedicated to highway improvements.[10]

The lack of comparability is further illustrated by the fact that state motor carrier fuel taxes—including Alabama's—are part of a federally-mandated national tax scheme. The Intermodal Surface Transportation Efficiency Act of 1991, 49 U.S.C. § 31705, prohibits states from maintaining or enforcing a motor carrier fuel use tax unless they comply with the International Fuel Tax Agreement ("IFTA"), an interstate compact under which Alabama and other states redistribute diesel fuel taxes according to highway usage reported quarterly by interstate motor vehicle operators to their home states. *See* International Fuel Tax Agreement, Arts. I, IX & X; Transcript of Bench Trial (Apr. 25, 2012) ("Transcript") (ECF No. 65) at 72-73 (Testimony of Jay Starling).

The Alabama Department of Revenue is authorized to "collect any motor fuel taxes and fees due the members of the agreement ... [and to] deposit taxes and fees collected into an escrow account, until the time as the taxes and fees can be distributed to the respective members." Ala. Code § 40-17-273. Alabama redistributes a portion of the diesel fuel tax proceeds it collects under the Motor

---

[10] *See* CSXT Br., Addendum E at 2-3 & n.6 (Plaintiffs' Exhibit 2, Statement by Richard R. Mudge, Ph.D.) (citing July 21, 2011 ATA statement before Senate Committee on Environment and Public Works and March 29, 2011 ATA statement before House Subcommittee on Highways and Transit); CSXT Br., Addendum F at 39 (Testimony of Dr. Mudge).

Fuel Tax to other states to account for fuel purchased in Alabama but used
elsewhere. *Id.* Alabama also receives tax proceeds from other states to account for
diesel fuel purchased outside of but used in Alabama, and it uses those funds in the
same way it does the revenues it collects under its Motor Fuel Tax. *See* Ala. Code
§ 40-17-274.

There is no comparable redistribution mechanism for the sales and use tax
paid by rail carriers on their fuel. This disparity confirms that the two taxes are not
comparable and thus cannot appropriately be compared to determine whether there
is tax discrimination against railroads.

This history and structure make clear that Alabama's motor fuel tax is a
classic example of a user charge or benefits tax—and is in no way comparable to
the straight-forward sales and use tax paid by the railroads. In contrast to the
benefits-received nature of the motor fuel tax, sales and use tax revenues can be
applied by Alabama as it sees fit to meet its general revenue needs, whether that be
to offset revenue lost by homestead tax exemptions, to provide funding to county
governments, to support the State General Fund or for education (where the
residual of all sales and use tax revenue not used for other purposes is presently
directed). Ala. Code § 40-23-35 (disposition of sales tax revenue); Ala. Code § 40-
23-85 (disposition of use tax revenue). The railroads receive no special benefit

– 15 –

from their payment of the sales and use tax, and any comparison of the two tax statutes would be wholly inappropriate.

> ### 2. Alabama's Motor Fuel Tax and Its Sales and Use Tax on Railroad Diesel Fuel Do Not Impose the Same Costs and Instead Vary Independently Based on Market Conditions.

Alabama's motor fuel tax also is not comparable to its sales and use tax on railroad diesel fuel because of differences in the ways the two taxes are structured. The state sales and use tax is based on a percentage—4%—of the price paid for the fuel, and the additional taxes that counties and municipalities are authorized to impose are similarly based on a percentage of that price. The amount of the tax thus fluctuates as the price of diesel fuel goes up or down. The taxes paid by the motor carriers, however, are at a fixed rate per gallon and thus remain the same— 19 cents per gallon—regardless of changes in the fuel price.

In this era of rapid fluctuations in energy prices, this is not a theoretical concern. As the District Court itself found, during the three-year period for which evidence was introduced at trial the relative price range had changed three times, with the motor carriers paying more tax during the initial 10-month period, then (with an increase in the price of diesel fuel) railroads paying a higher tax for the next 13 months, then the pendulum swinging back to a higher tax for the motor

– 16 –

carriers for the next 12 months, ending with a two-month period in which the railroads again paid a higher tax.[11]

This was not an aberration. U.S. Energy Information Administration data shows that from December 2009 through July 2012, diesel fuel prices in Alabama have continued to fluctuate significantly, though they have remained above December 2009 levels.[12] The District Court found that at December 2009 diesel prices, the taxes paid by railroads exceed those paid by motor carriers. *See* Opinion at 24. Thus for all or most of the 31-month period following December 2009, the taxes paid by rail carriers under Alabama's sales and use taxes have been higher than those paid by motor carriers, as illustrated by the following graph of

---

[11] The District Court found the following differentials in diesel fuel prices during the period covered by the testimony (*see* Opinion at 23-25):

| Months | Dates | Motor Carriers Paid More | Railroads Paid More |
|--------|-------|:---:|:---:|
| 10 | Jan. 2007 – Oct. 2007 | ✓ | |
| 13 | Nov. 2007 – Nov. 2008 | | ✓ |
| 12 | Dec. 2008 – Oct. 2009 | ✓ | |
| 2 | Nov. 2009 – Dec. 2009 | | ✓ |

[12] *See* U.S. Energy Information Administration, *Alabama No. 2 Distillate Retail Sales by Refiners (Dollars per Gallon)*, *available at* http://www.eia.gov/dnav/pet/hist/LeafHandler.ashx?n=PET&s=EMA_EPD2_PWG _SAL_DPG&f=M (last visited Oct. 22, 2012).

– 17 –

data from the source in note 12:



Given the turmoil in the Middle East and the likelihood of periodic disruptions in

fuel supplies, it must be anticipated that price fluctuations and higher prices will

continue for the indefinite future.

The District Court recognized the fluctuating level of taxes paid by the

railroads and the fact this had resulted in at least a fifteen-month period when the

railroads paid a higher tax on diesel fuel than competing motor carriers, but

brushed aside the disparity with the assertion that "the rates are substantially

similar." *See* Opinion at 24-25. The court below went on to state—with no

explanation—that it "finds any differences sufficiently justified, and, most

– 18 –

importantly, the court finds that these differences offer no favoritism to motor carriers as opposed to rail carriers." *Id.* at 25.

To the extent the District Court's finding that the differences "offer no favoritism to motor carriers as opposed to rail carriers" implies that it regarded the lack of an intent to discriminate against the railroads as significant, its decision is directly contrary to the Supreme Court's holding that proof of an intent to discriminate is not necessary to establish a violation of Section 306. *See Oklahoma Tax Comm'n*, 481 U.S. at 462-63. And by brushing off the conceded disparity in railroad and motor carrier taxes, the court below failed to carry out the directive of Section 306 that "another tax that discriminates against a rail carrier" is prohibited. 49 U.S.C. § 11501(b)(4). A meaningful evaluation of these allegedly comparable taxes would require a federal court to monitor changes in the price of diesel fuel on an ongoing basis so that it could determine whether disparities create discrimination at any given point in time—and to enter or lift injunctions accordingly.

But the basic point is that the effort to compare taxes as fundamentally different as the motor carrier fuel tax and the sales and use tax should never have been undertaken in the first place. The problems in fashioning a meaningful remedy simply underline the fact that these very different taxes are not comparable

– 19 –

and thus the District Court should not have taken the motor fuel taxes into consideration at all.

### 3.    Because Alabama's Motor Fuel Tax Cannot Justify Discrimination Against Railroads Under the Diesel Fuel Sales and Use Tax, the Latter Tax Must Be Enjoined.

The District Court's reliance on the motor fuel excise tax to justify the facial discrimination created by the fact that Alabama's sales and use tax on diesel fuel applies to railroads but not to competing motor carriers fails for two reasons. First, only the challenged tax can be considered. Second, even assuming that were not the law, Alabama's motor fuel excise tax is not comparable.

Congress expressly empowered federal courts to end such discrimination by enjoining collection of the discriminatory tax from the railroads. *See* 49 U.S.C. § 11501(c); *see also Alabama DOR*, 131 S.Ct. at 1105 & n.2. The Section 306 remedy thus is tightly focused on the relief Congress mandated to protect commerce for the Nation as a whole. There is no interference with state tax regimes except as surgically necessary to end this particular discrimination.

Nor should there be concern as to the potential effect on state revenues. That is something Congress left to states to address if collection of a tax against railroads is enjoined. Here, Alabama could simply repeal the exemption from the sales and use tax presently granted to motor carriers. Several states currently impose *both* a motor fuel tax and a sales and use tax on diesel fuel purchased or

– 20 –

used by motor carriers within the state.[13] Those states have concluded that motor

carriers should support the construction and maintenance of the highways that the

state provides for them by paying the user charge imposed by the motor fuel tax;

railroads bear the cost of their own "highways" by paying for the material required

for the construction and maintenance of their track and roadbed and also paying

sales and use tax on that material.[14] Both the motor carriers and the railroads then

pay the sales and use tax on the diesel fuel that they purchase or use in the state, as

well as on any other commodities subject to that tax. This is precisely the kind of

non-discriminatory treatment Section 306 requires.

---

[13] Those states include: Illinois, 35 Ill. Comp. Stat. Ann. 105/3 (use tax), 35 Ill. Comp. Stat. Ann. 120/2-10 (sales tax), 35 Ill. Comp. Stat. Ann. 505/2 (diesel fuel use tax); California, Cal. Rev. & Tax. § 6051 (sales tax), §§ 60050 *et seq.* (diesel fuel tax); New York, N.Y. Tax Law §§ 282-a to 282-c (diesel sales and use tax), § 523 (fuel use tax), § 1105 (sales tax), § 1110 (use tax).

[14] Like most state motor fuel taxes, Alabama's Motor Fuel Tax on diesel fuel is the same regardless of whether it is purchased by a motor carrier or the driver of an automobile. However, the Federal Highway Administration estimated in 2000 that interstate *automotive* travel only costs 0.1 cent in pavement damage per mile, compared to interstate truck travel pavement damage costs as high as 12.7 cents per mile on rural interstate highways and 40.9 cents on urban ones. *See* U.S. General Accounting Office, *Highway Infrastructure: Interstate Physical Conditions Have Improved, but Congestion and Other Pressures Continue*, Report to the Committee on Transportation and Infrastructure, House of Representatives, GAO-02-571 (May 2002) at 46-47 (citing Fed. Highway Admin., Addendum to 1997 Federal Highway Cost Allocation Study, Final Report (May 2000)).

### B.  ALABAMA'S SALES AND USE TAX EXEMPTIONS FOR INTERSTATE WATER CARRIERS VIOLATE SECTION 306 ON THEIR FACE IRRESPECTIVE OF MOTOR CARRIERS.

CSXT has detailed why the District Court was wrong in refusing to find a violation of Section 306 based on discrimination against railroads as compared to interstate water carriers—despite the fact that those water carriers pay no fuel tax whatsoever and were stipulated to be one of CSXT's "principal competitors" in Alabama. *See* CSXT Br. at 48-50. But the treatment of that issue in the decision below has ramifications far beyond this particular case. The District Court's rationale reflects a fundamental misunderstanding of the scope of Section 306 and the relief the federal courts are authorized to grant. It also wrongly suggests that limits on state taxation under the *dormant* Commerce Clause can somehow block relief that Congress has mandated in the affirmative exercise of its Commerce Clause powers.

The District Court concluded that CSXT "fail[ed] to meet it[s] evidentiary burden of proof" because it purportedly offered "no evidence regarding the purported discriminatory effect as it relates to water carriers." Opinion at 30. As CSXT points out, that conclusion either misreads or ignores the record in this case—specifically, stipulated facts that provided all evidence necessary to prove the discriminatory effect of the water carriers' exemption. *See* CSXT Br. at 47. Joint Exhibit No. 1 included the following "Agreed Facts":

– 22 –

> 10.  The principal competitors to rail carriers in the transportation of property in interstate commerce in the State of Alabama are on-highway motor carriers of property in interstate commerce ("motor carriers") and carriers of property in interstate commerce by ship, barge and other vessels ("water carriers"). …

> 11.  Water Carriers are exempt from sales or use taxes on their purchase of diesel fuel in the State of Alabama used for interstate transportation.

Agreed Facts, ¶¶ 10 & 11 (citations to complaint omitted).

These were the *only* facts necessary to establish the existence of discrimination prohibited by Section 306.  Stipulated facts must be accepted by the court. *See, e.g., Christian Legal Soc'y Chapter v. Martinez*, 130 S. Ct. 2971, 2983 (2010) (quoting 2 K. Broun, McCormick on Evidence § 254, p. 181 (6th ed. 2006)) ("[F]actual stipulations are 'formal concessions ... that have the effect of withdrawing a fact from issue and dispensing wholly with the need for proof of the fact.  Thus, a judicial admission ... is conclusive in the case.'").  By ruling against CSXT on the basis of insufficient evidence notwithstanding the stipulation, the court below has called into question a practice regularly employed in litigating state tax discrimination cases under Section 306—simplification of the issues by stipulating to facts that are undisputed—and that benefits the court as well as the

parties. The District Court's failure to accept the parties' stipulated facts here was in itself reversible error, and voids its "failure of proof" argument completely.[15]

Indeed, once that error and the lower court's improper reliance on taxes beyond the one being challenged are corrected, the conclusion that Alabama has violated Section 306 is unavoidable. It is undisputed that the members of the comparison class—the "'competing transportation modes' [that] constitute the proper comparison under the 4-R Act" are rail carriers, motor carriers and water carriers engaged in interstate commerce. *See* Opinion at 13; *see also* Agreed Facts, ¶¶ 10 & 11. With both interstate motor and water carriers exempt from Alabama's sales and use tax on diesel fuel, railroads have been "singled out" for taxation, an evil that Section 306 forbids in any form. *See ACF Industries*, 510 U.S. at 346-47.

The District Court's second rationale for ignoring interstate water carriers was that CSXT had failed to prove a Section 306 violation because it "asks this Court to assume that eliminating Alabama's diesel tax exemptions for interstate/foreign water carriers would survive commerce clause scrutiny." Opinion at 31. That rationale mischaracterizes both the relief Section 306 authorizes and the relationship between a statute enacted by Congress pursuant to

---

[15] Paradoxically, the District Court described at length statistics related to the volume of freight transported by *intrastate* water carriers. Opinion at 30-31. CSXT never claimed that the intrastate water carriers were among its principal competitors, so those statistics were wholly irrelevant.

its Constitutional power over interstate commerce and the effects of the dormant

Commerce Clause. These misconceptions go to the very heart of Section 306 and

are of fundamental concern to AAR's members.[16]

The District Court apparently assumed that to grant CSXT relief under

Section 306, it would have to enjoin Alabama's exemption and in effect order the

state to collect a diesel fuel tax from interstate water carriers. That completely

misreads the statute.

Under Section 306, the relief a federal court is authorized to grant when it

finds that a tax discriminates against a railroad is strictly limited to enjoining

collection of the tax *from the railroad*. Section 306(c) grants only the limited

jurisdiction "to prevent a violation of subsection (b)"—that is, to enjoin the state

from collecting a tax from the railroads that the court finds to be discriminatory.[17]

And indeed, that was the only relief CSXT sought in its Complaint. *See* Complaint

---

[16] As CSXT points out, the District Court's references to "foreign water carriers"—indeed, its entire discussion of international commerce—is wholly irrelevant given that CSXT never claimed it competes with water carriers engaged in foreign commerce. *See* CSXT Br. at 49-50.

[17] *See Alabama DOR*, 131 S.Ct. at 1105 (noting that section 11501(c) "confers jurisdiction on federal courts to 'prevent a violation' of § 11501(b) notwithstanding the Tax Injunction Act, 28 U.S. C. § 1341, which ordinarily prohibits federal courts from enjoining the collection of state taxes when a remedy is available in state court"); *CSX Transp., Inc. v. Board of Pub. Works,* 138 F.3d 537, 540-41 (4th Cir. 1998) (allowing injunction against collection of state taxes from a railroad under *Ex Parte Young* doctrine because Section 306 provides prospective relief).

– 25 –

(ECF No. 1), at 6-7. Enjoining the collection of a state tax on interstate *rail*
carriers cannot possibly affect the tax status of the interstate *water* carriers. The
District Court's entire discussion of the dormant Commerce Clause is simply
irrelevant.

More fundamentally, the District Court's dormant Commerce Clause
concerns are unfounded because the relief that may be granted under Section 306 is
authorized by an Act of Congress. The dormant Commerce Clause only limits
*state* regulation of interstate commerce.[18] Congress, on the other hand, has the
power to regulate interstate commerce, and may even authorize states to enact laws
or regulations that would otherwise violate the dormant Commerce Clause. *See,
e.g., South Cent. Timber Dev. v. Wunnicke*, 467 U.S. 82, 87-88 (1984) (noting that
"the Commerce Clause is by its text an affirmative grant of power to Congress to
regulate interstate and foreign commerce" and that "Congress may 'redefine the
distribution of power over interstate commerce' by 'permit[ting] the states to
regulate the commerce in a manner which would otherwise not be permissible'")
(quoting *Southern Pac. Co. v. Arizona*, 325 U.S. 761, 769 (1945)). Thus, even if

---

[18] *United Haulers Ass'n v. Oneida-Herkimer Solid Waste Mgmt. Auth.*, 550
U.S. 330, 338 (2007) ("we have long interpreted the Commerce Clause as an
implicit restraint on state authority"); *Southern Waste Sys., LLC v. City of Delray
Beach*, 420 F.3d 1288, 1290 (11th Cir. 2005) (The dormant Commerce Clause
"forbids a state or municipality from impeding the flow of goods and services
across state borders, or from favoring in-state economic interests at the expense of
out-of-state economic interests.").

the dormant Commerce Clause might somehow be implicated by granting CSXT relief in this case—which it is not—the relief authorized by Congress would override any possible dormant Commerce Clause issues.

It is in any event difficult to comprehend what defect the District Court thought might exist with respect to state taxation of interstate water carriers. *See* Opinion at 31-32 (citing *Complete Auto Transit, Inc. v. Brady,* 430 U.S. 274, 288 (1977)). *Complete Auto* upheld a sales and use tax imposed on motor carriers transporting goods in interstate commerce. *See* 430 U.S. at 275-76, 289. Why a sales and use tax on interstate water carriers would run afoul of the *Complete Auto* standards when a similar tax on motor carriers did not is never explained. For that matter, the diesel fuel sales and use tax on railroads would fall into the same category. In short, the *Complete Auto* rationale below is totally unfounded, and should be rejected by this Court.

Correcting the District Court's errors regarding water carrier discrimination is sufficient to resolve this case even without regard to its errors on motor carrier issues. The discrimination against railroads that results from Alabama's total exemption of interstate water carriers from any tax whatsoever on diesel fuel in itself requires an injunction against the continued collection of the sales and use tax on diesel fuel from the railroads.

In order to establish a Section 306 violation, it is not necessary that *all* of a railroad's competitors receive more favorable treatment. *Union Pacific* is directly on point. *See* 507 F.3d at 696. The Eighth Circuit held that when motor and air carriers were exempt from the sales and use tax imposed on the railroads, that tax was discriminatory in violation of Section 306 even though interstate water carriers—also competitors of the railroads—were subject to it. The fact that some competitors were exempt from the sales and use tax was sufficient to require a finding of discrimination. So here, the fact that one principal competitive mode— interstate water carriers—is exempt from the sales and use tax is sufficient to require a finding of a violation of Section 306 and the issuance of an injunction against the collection of that tax from the railroads.

– 28 –

## V. CONCLUSION

For all of the foregoing reasons and those set forth in the Brief of Appellant

CSXT, the District Court's decision should be reversed.

Respectfully Submitted,

*Betty Jo Christian*

LOUIS P. WARCHOT
JANET L. BARTELMAY
ASSOCIATION OF AMERICAN RAILROADS
425 Third Street, S.W.
Washington, DC 20024
Telephone: 202.639.2100

BETTY JO CHRISTIAN
TIMOTHY M. WALSH
THEODORE N. NEMEROFF
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue N.W.
Washington, DC 20036
Telephone: 202.429.8113

*Counsel for Amicus Curiae Association of American Railroads*

October 23, 2012

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the type-volume limitation set forth in Fed. R. App. P. 32(a)(7)(B). This brief contains 6,750 words, excluding the parts of the brief exempted by Fed R. App. P. 32(a)(7)(B)(iii).

This brief also complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6). This brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in fourteen-point, Times New Roman font.

Theodore N. Nemeroff

## CERTIFICATE OF SERVICE

The undersigned counsel certifies that a true and correct copy of the

foregoing has been served upon the following counsel of record by e-mail and by

depositing two copies thereof in the United States mail, properly addressed and

postage pre-paid, this 23rd day of October, 2012:

> James W. McBride
> Baker, Donelson, Bearman,
>  Caldwell & Berkowitz, PC
> 920 Massachusetts Avenue,
> NW, Suite 900
> Washington, DC 20001
>
> Margaret Johnson McNeill
> Assistant Attorney General
> State of Alabama and Assistant Counsel
> Department of Revenue
> P.O. Box 320001
> Montgomery, Alabama 36132-0001

Theodore N. Nemeroff

– 31 –