_____

**No. 12-14611-BB**
_____

---

**UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT**

---

**CSX TRANSPORTATION, INC.,**

Plaintiff-Appellant,

v.

**ALABAMA DEPARTMENT OF REVENUE
and JULIE P. MAGEE, COMMISSIONER OF
THE ALABAMA DEPARTMENT OF REVENUE,**

Defendants-Appellees.

---

On Appeal from the United States District Court
For the Northern District of Alabama

---

**BRIEF OF APPELLEES
ALABAMA DEPARTMENT OF REVENUE
AND JULIE P. MAGEE, COMMISSIONER OF REVENUE**

---

LUTHER STRANGE
*Alabama Attorney General*
John C. Neiman, Jr.

*Alabama Solicitor General*
State of Alabama
Office of the Attorney General
501 Washington Avenue
Montgomery, AL 36130-0152
Tel: (334) 242-7300

MARGARET JOHNSON MCNEILL
KEITH MADDOX
Assistant Attorneys General,

State of Alabama
Assistant Counsel,
Department of Revenue
P.O. Box 32001
Montgomery, AL 36132-0001
Tel: (334) 242-9690

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Defendants/Appellees Alabama Department of Revenue and Julie P. Magee, Commissioner of the Alabama Department of Revenue (hereinafter collectively referred to as "Department"), through its counsel, certifies that the following individuals or entities have an interest in the outcome of this case:

1.    Alabama Department of Revenue, Appellee

2.    Baker, Donelson, Bearman, Caldwell & Berkowitz, PC, attorneys for Appellant

3.    CSXT, a wholly-owned subsidiary of CSX Corporation, Appellant[1]

4.    Davis, Marquita F., Director of Finance, State of Alabama

5.    Goodwin, Stephen D., attorney for Appellant

6.    Hinton J. Forrest, attorney for Appellant

7.    Kallon, the Honorable Abdul, trial judge

8.    Maddox, W. Keith, attorney for Appellee

9.    Magee, Julie, in her official capacity as Commissioner of the Alabama Department of Revenue, Appellee

10.    McBride, James W., attorney for Appellant

11.    McNeill, Margaret Johnson, attorney for Appellee

12.    Strange, Luther, Attorney General, State of Alabama

---

[1] CSX Corporation's stock is publicly traded under the ticker symbol "CSX." CSXT has previously supplied a list of the subsidiaries and affiliates of CSX Corporation. CSX Corporation has represented that none of the listed subsidiaries and affiliates, including CSXT, have publicly traded stock.

13.    White, James attorney for Appellant

Respectfully submitted,

/s/Margaret Johnson McNeill
MARGARET JOHNSON MCNEILL
WILLIAM KEITH MADDOX
Assistant Attorneys General,
State of Alabama and Assistant Counsel,
Department of Revenue
P. O. Box 320001
Montgomery, AL  36132-0001
Telephone:  (334) 242-9690
margaret.mcneill@revenue.alabama.gov
keith.maddox@revenue.alabama.gov

Attorneys for Defendants-Appellees

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

In <u>CSX Transportation, Inc. v. Alabama Dept. of Revenue</u>, 131 S.Ct.1101 (2011), the Supreme Court reversed this Court's decision, (350 F. Appx. 318) and remanded this case for further proceedings consistent with its opinion, i.e., to determine whether the State of Alabama actually discriminated against Appellant CSX Transportation Inc., a matter the Supreme Court left specifically to the Trial Court "to address as and when it wishes."  <u>See</u> <u>CSX Transportation</u> at 1101, n.5.

After a trial on the merits, the district court did as the Supreme Court mandated and in a clear, comprehensive, well–researched and well-reasoned opinion found no violation of the Railroad Revitalization Regulatory  Reform Act ("4-R Act"), codified at 49 U. S. C. §11501.  Because the district court's opinion is so comprehensive, well-researched, and well-reasoned, oral argument is unnecessary.

i

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE
DISCLOSURE STATEMENT ..................................................................C

STATEMENT REGARDING ORAL ARGUMENT ............................... i

TABLE OF CONTENTS......................................................................... ii

TABLE OF AUTHORITIES ...................................................................v

TABLE OF RECORD REFERENCES IN THE BRIEF......................... ix

STATEMENT OF THE ISSUES PRESENTED FOR REVIEW .............1

    (1) Whether the district court erred in holding that Alabama's sales and use tax
    paid by rail carriers is not discriminatory of the 4-R Act, as the State's overall
    excise structure imposes other excise taxes on the railroads' competitors..............1

    (2) Whether the district court erred in declining to consider how the State of
    Alabama spends its tax revenues derived from the taxation of diesel fuel..............1

STATEMENT OF THE CASE...................................................................2

STATEMENT OF THE FACTS ...............................................................2

COURSE OF PROCEEDINGS BELOW………………………………… 7

STANDARD OF REVIEW…………………………………………… 12

SUMMARY OF THE ARGUMENT .....................................................14

ARGUMENT ........................................................................................16

I. THE DISTRICT COURT CORRECTLY FOUND THAT CSXT DID NOT
    ESTABLISH THAT ALABAMA'S SALES AND USE TAX
    DISCRIMINATES AGAINST RAILROADS BECAUSE OF THE
    SEPARATE EXCISE TAX IMPOSED ON MOTOR CARRIERS AND THE
    LACK OF EVIDENCE REGARDING WATER CARRIERS..................16

A. CSXT DID NOT SHOW THAT ALABAMA'S TREATMENT OF MOTOR CARRIERS AMOUNTED TO UNLAWFUL DISCRIMINATION.........................................................................................21

1. The precedents on which CSXT relies do not persuasively support a refusal to consider other taxes.......................... 22

2. The text of the 4-R Act, and the Supreme Court's decision in this case, are contrary to CSXT's suggestion that the Court should decline to consider the motor fuels tax................ . 25

3. The District Court correctly did not consider the deposition of the proceeds of the sales tax and the motor fuels tax....... 32

II. CSXT FAILED TO PROVIDE EVIDENCE OF A DISCRIMINATORY EFFECT WITH REGARD TO WATER CARRIERS ……..…………… 34

III. ALTERNATIVELY, CSXT'S CLAIM IS DUE TO BE DISMISSED FOR THE REASONS GIVEN BY JUSTICES THOMAS AND GINSBURG ……………………………………………………………………………  36

CONCLUSION ....................................................................38

CERTIFICATE OF COMPLIANCE WITH RULE 32(A)(7) ................................39

CERTIFICATE OF SERVICE ...............................................................40

ADDENDUM

A.  Norfolk Southern Ry. Co. v. Alabama, 2:08-CV-00285-HGD (M.D. Ala. April 9, 2008)

B.  Burlington Northern Santa Fe Railway Company v. H.E. Monroe, Commissioner of Revenue of the State of Alabama, Civil Action No. 97-D-1754-N, slip op. (M.D. Ala. Aug. 19, 1998)

C.  Trial Testimony of Derrick Stephen DuBose

D.   Trial Testimony of Joe Walls

E.    <u>Ala. Admin. Code</u>, 810-8-1-.17

## <u>TABLE OF AUTHORITIES</u>

**Cases**

<u>American United Life Ins. Co. v. Martinez,</u> 480 F. 3d 1043 (11th Cir. 2007)……37

<u>Alabama Great Southern R.R. Co. v. Eagerton</u>, 663 F.2d 1036 (11th Cir. 1981)....17

<u>Atchison, Topeka, and Santa Fe Ry. v. State of Ariz.</u>,
78 F. 3d 438 (9th Cir. 1996).......................................................................... 14, 18, 34

<u>Brundidge Milling Co. v. State</u>, 45 Ala. App. 208, 228 So.2d 475 (1969)................28

<u>Burlington N.R.R. v. City of Superior</u>, 932 F.2d 1185 (7th Cir. 1991)............. 14, 18

<u>Burlington Northern Santa Fe Railway Company v. H.E. Monroe, Commissioner of Revenue of the State of Alabama</u>, Civil Action No. 97-D-1754-N, slip op. (M.D. Ala. Aug. 19, 1998).................................................................................... 11, 24, 25

<u>Burlington Northern Santa Fe Ry. Co. v. Lohman</u>,
193 F.3d 984 (8th Cir.1999)........................................................................ 22, 23, 26

<u>Carmichael v. Southern Coal & Coke Co.</u>, 301 U.S. 495, 57 S.Ct. 868 (1937).. 28, 33

<u>CSX Transp., Inc. v. Alabama Dept. of Revenue</u>, 131 S. Ct. 1101 (2011)..... passim

<u>Cumulus Media, Inc. v. Clear Channel Commc'ns.</u>, 304 F. 3d 1167 (11th Cir. 2002)…………………………………………………………………………13

<u>Department of Revenue v. ACF Indus., Inc.</u>, 510 U.S. 332, 336, 114 S. Ct. 843 (1994) ....................................................................................................................17

<u>Department of Revenue v. Midstream Fuel Serv.</u>, 521 So. 2d 75 (Ala. Civ. App. 1988)…………………………………………………………………  29,30

<u>Ka. City S. Ry. v. McNamara</u>, 817 F. 368 (5th Cir. 1987).......................... 22, 23

<u>Kansas City Southern Railway Co. v. Bridges</u>, 2007 WL 977552 (W.D. La., Mar. 30, 2007)……………………………………………………………………  23

Lawrence v. State Tax Commission, 286 U.S. 276, 52 S. Ct. 556, 557(1932) .......20

Lunding v. New York Tax Appeals Tribunal, 522 U.S. 287, 118 S. Ct. 766, 774 (1998) ........................................................................................................................20

Norfolk Southern Ry. Co. v. Alabama, 2:08-CV-00285-HGD (M.D. Ala. April 9, 2008)…………………………………………………………………………….11,23, 24

Norfolk Southern Ry. v. Alabama Dept. of Revenue, 550 F.3d 1306 (11th Cir. 2008) ......................................................................................................................8

Ogilvie v. State Board of Equalization, 657 F. 2d 204 (8th Cir. 1981) ....... 14, 17, 18

Schuylkill Trust Co. v. Commonwealth of Pennsylvania, 296 U.S. 113, 56 S. Ct. 31 (1935) ...............................................................................................................20

State Department of Revenue v. Orange Beach Marina, Inc., 699 So. 2d 1279 (1997) ..............................................................................................................6, 29

Trailer Train Co. v. State Tax Comm'n, 929 F.2d 1300 (8th Cir. 1999)........... 22, 34

Tully v. Griffin, 429 U. S. 68, 97 S. Ct. 219 (1976)...............................................34

Union Pacific R. R. Co. v. Minnesota Depart. of Revenue, 507 F.3d 693 (8th Cir. 2007) ................................................................................................................ 19, 23

West Lynn Creamery, Inc., v. Healy, 512 U. S. 186, 114 S. Ct. 2205 (1994)………………………………………………………………………… 32, 33

**Statutes**

26 U.S.C. §4082…………………………………………………………………………4

Ala. Code § 40-17-2(1) ................................................................. passim

Ala. Code § 40-17-13..........................................................................7, 33

Ala. Code § 40-17-23...............................................................................33

Ala. Code § 40-17-31(c) ..........................................................................33

Ala. Code § 40-17-72.....................................................................................33

Ala. Code § 40-17-220(e) .................................................... 4, 6, 7, 29, 31

Ala. Code § 40-17-222....................................................................7, 33

Ala. Code § 40-17-223.....................................................................33

Ala. Code § 40-23-2(1) ........................................................ 4, 21, 30

Ala. Code § 40-23-4(a)(10)........................................... 7, 29, 31, 35

Ala. Code § 40-23-26(c)…………………………………………………………3

Ala. Code § 40-23-35.....................................................................7, 33

Ala. Code § 40-23-61 (a)…………………………………………………… 4

Ala. Code § 40-23-62(12) ......................................................... 7, 29, 31

Ala. Code § 40-23-85.....................................................................7, 33

Section 306(1)(d) of the Railroad Revitalization and Regulatory Reform Act of 1976, Pub. L. No. 94-210, 90 Stat. 31, 54 (Feb. 5, 1976)  (codified at 49 U. S. C. § 11501(b)(4)(2000)) ........................................................................ passim

**Rules**

11th Cir. R. 32-4 .......................................................................39

Fed. R. App. P. 32(a)(7)(B) ......................................................39

**Legislative Materials**

S. Rep. No. 445.........................................................................18

**Other Authorities**

Ala. Admin. Code r. 810-8-1-.17…………………………………………….30

The Alabama Constitution of 1901, Art. IV §93…………………………………33

## TABLE OF RECORD REFERENCES
## IN THE BRIEF

Brief Page #                                                    Docket #


| 2, 3, 4 | Agreed Proposed Facts and Conclusions of Law | 63 |
| 5,11,12,23, 27, 31, 32, 34, 35 | Memorandum Opinion | 71 |
| 6 | Motion in Limine | 58 |
| 7 | Complaint | 1 |
| 8 | Motion for Preliminary Injunction | 5 |
| 8 | Order Granting Preliminary Injunction | 14 |
| 8 | Order Dissolving Preliminary Injunction and Dismissing Case | 22 |
| 10 | Order Reinstating Preliminary Injunction | 35 |
| 22 | CSXT pretrial brief | 61 |
| 22 | CSXT post-trial brief | 68 |
| 29, 30, 31 32, 33, 34 | Trial transcript | 65 |

## <u>STATEMENT OF THE ISSUES PRESENTED FOR REVIEW</u>

The district court held that Alabama's imposition of a sales and use tax on CSX Transportation, Inc.'s purchase and use of diesel fuel where the competitors of railroads in Alabama pay a differently labeled tax on their purchase and use of diesel fuel does not violate §306(1)(d) of the Railroad Revitalization and Regulatory Reform Act of 1976, currently codified at 49 U. S. C. § 11501(b)(4).

The issues presented are:

(1) Whether the district court erred in holding that Alabama's sales and use tax paid by rail carriers is not discriminatory under the 4-R Act, as the State's overall excise structure imposes other excise taxes on the railroads' competitors.

(2) Whether the district court erred in declining to consider how the State of Alabama spends its tax revenues derived from the taxation of diesel fuel.

## STATEMENT OF THE CASE

### I.    Nature of the Case

This case arises from the Railroad Revitalization and Regulatory Reform Act of 1976, which is commonly known as the 4-R Act and currently codified at 49 U. S. C. § 11501(b)(4). This statute precludes States from imposing taxes that "discriminate" against railroads. CSXT, a rail carrier, seeks an injunction precluding Alabama from imposing its sales and use tax on diesel fuel CSXT purchases and uses within the State. CSXT's challenge is based on the fact that Alabama grants an exemption from this tax to certain highway motor carriers and water carriers. At an earlier stage of this case, the Supreme Court held that the 4-R Act allows CSXT to challenge the exemptions, but left it to the District Court to determine, in the first instance, whether these exemptions constitute "discrimination" against railroads for the purposes of the 4-R Act. The District Court conducted a bench trial and determined, after engaging in a fact bound analysis that CSXT had not proved those exemptions to be discriminatory. CSXT is asking this Court to reverse that bench verdict.

### II.    Statement of Facts

CSXT is an interstate common carrier by rail operating in Alabama. (Stip., ¶

2

1).[2]  The Defendants are the Alabama Department of Revenue, and Julie P. Magee, as Commissioner of the Alabama Department of Revenue.  The Alabama Department of Revenue is the Department charged with the responsibility to administer and collect taxes within Alabama, including the administration of sales and use taxes.  The Commissioner is named in this action in her official capacity only.  As Commissioner, Ms. Magee exercises general supervision over the administration of the assessment and taxation laws of Alabama, including those imposing sales and use taxes (Stip., ¶¶ 2-3).

Alabama imposes a sale tax on the gross receipts from a business selling at retail.  The sales tax is collected by retailers, but is actually imposed on the consumer.  Ala. Code §40-23-26(c)(Repl. 2011). CSX, however, holds a direct pay permit issued by the Department. Under a direct pay permit, vendors of CSX do not collect the sales tax from CSX and then remit the taxes to the Department or local counties and municipalities.  Instead, CSX is allowed to file sales and use tax returns and pay taxes directly to the Department and to the local counties and municipalities. (Stip., ¶ 9).  Alabama also imposes a use tax on the storage, use or consumption of tangible personal property in Alabama where a sales tax has not

---

[2] Pursuant to the District Court's pretrial orders, the parties filed Agreed and Proposed Facts and Proposed Conclusions of Law (Doc. 63).  At trial, the district court admitted paragraphs 1- 19 of the agreed facts as Joint Exhibit 1.  (Tr. Doc. 65, p. 13).  This document appears in the Appellant's Record Excerpts at Tab 63, and will be cited as "Stip., ¶ ____ ).

been previously paid.  <u>See</u> <u>Ala</u>. <u>Code</u> §§40-23-2(1), 40-23-61(a)(Repl. 2011).

Thus, the sales and use tax are complementary, not duplicative, taxes.

The sale or consumption of petroleum products in Alabama is generally

subject to either the various excise taxes imposed by Title 40, Chapter 17 of the

<u>Ala.</u> <u>Code</u> ("Motor Fuels Tax"), or the sales and use taxes imposed by Title 40,

Chapter 23 of the <u>Ala.</u> <u>Code</u> ("Sales and Use Tax").  Fuel subject to the Motor

Fuels Tax under Title 40, Chapter 17 is not subject to sales and use taxes under

Title 40, Chapter 23.  The motor fuels excise tax specifically exempts "motor fuel

that is indelibly dyed and chemically marked in accordance with regulations issued

by the Secretary of the Treasury of the United States under 26 U.S.C. §4082. . ."

Ala. Code §40-17-2(1)(Repl. 2011).  Because rail carriers use dyed diesel fuel, the

purchase and consumption of diesel fuel used by rail carriers are exempt from

motor fuels tax, and thus, railroads are subject to sales and use tax.  The State sales

tax is imposed at the rate of 4%.  Additional amounts are imposed at varying rates

by various Alabama counties and municipalities.  (Stip., ¶ 7-8, 16).

Critically for present purposes, the District Court found that based on the

record before it, CSXT's exemption from the Motor Fuels Tax ultimately worked

to its benefit. The Motor Fuels Tax is assessed at a rate of 19 cents per gallon. <u>See</u>

<u>Ala</u>. <u>Code</u>, §§40-17-2(1)(Repl. 2011) (13 cents per gallon) and 40-17-220(e)(Repl.

2011) (6 cents per gallon).  As a result, the District Court found, "[t]he evidence

demonstrates that from January 26, 2007 through December 25, 2009, motor carriers," which were subject to the Motor Fuels Tax, "paid more per gallon of diesel fuel (average price per gallon + 19¢ per gallon) than rail carriers" like CSXT did. (Opinion, Doc. 71, pp. 23-24).  Indeed, the District Court found that "even when factoring the local (city and county) sales and use taxes imposed on rail carriers's diesel fuel, rail carriers and motor carriers paid similar rates per gallon of diesel fuel from January 2007 through December 2009." (Opinion, Doc. 71, p. 24). Thus, the District Court concluded as a factual matter that railroads and motor carriers "pay a substantially similar tax rate on diesel fuel and, accordingly, neither transportation mode is unjustifiably favored."(Opinion, Doc.71,p.25). Accordingly, the District Court concluded, "motor carriers receive an exemption from paying Alabama's sales and use taxes on diesel fuel *because* they pay a comparable excise tax on this fuel, a tax not imposed on rail carriers."(Opinion, Doc. 71, p. 25) (emphasis supplied).

The Department does not act in concert, nor does it administer, collect, monitor, enforce, provide legal services for, or set the rates of sales and or use tax in localities where CSXT owes and/or pays local sales and/or use tax on its purchase, use, or consumption of diesel fuel.  All these localities self-administer

5

their own taxes. (Motion in Limine, Doc. 58). [3]

The principal competitors of rail carriers in Alabama are on-highway motor carriers of property in interstate commerce ("motor carriers") and carriers of property in *intra*state commerce by ships, barges, and other vessels ("water carriers"). (Stip., ¶10). Highway motor carriers are subject to the 19 cents per gallon motor fuel tax on purchases of diesel fuel. See Ala. Code, §§40-17-2(1)(Repl. 2011) (13 cents per gallon) and 40-17-220(e)(Repl. 2011) (6 cents per gallon). Because highway motor carriers pay the motor fuel tax, they are exempt from sales tax. See Ala. Code, §40-17-2(1)(Repl. 2011). Conversely, motor carriers operating off road and using dyed diesel fuel must pay the sales tax, just like the railroads. Ala. Code §40-17-2(1)(repl. 2011).

Water carriers are subject to Alabama sales and use tax on purchases of fuel used for intrastate transportation purposes. Intrastate transportation includes instances when a barge or ship travels between state territorial waters and foreign waters but does not travel to a foreign country's port or another states' port. See State Department of Revenue v. Orange Beach Marina, Inc., 699 So. 2d 1279 (1997). On the other hand, water carriers are exempt from sales and use taxes on their purchase or consumption of diesel fuel used for interstate or foreign

---

[3] The Department's Motion in Limine to exclude from the trial in this case all evidence, questioning, argument, documents, or testimony pertaining to the administration of local sales tax, was denied by the district court. (Opinion, Doc. 71, p.24).

commerce.   The exemption from sales tax requires that a vessel travel to a foreign port to be deemed to be engaged in international or interstate commerce.   <u>Ala</u>. <u>Code</u> §§ 40-17-2(1)(Repl. 2011) and 40-17-220(e)(Repl. 2011) (motor carriers-motor fuels tax), 40-23-4(a)(10)(Repl. 2011)(water carriers-sales tax) and 40-23-62(12) (water carriers-use tax)(Repl. 2011.).

Revenues from Alabama's sales and use tax are distributed and allocated in accordance with <u>Ala</u>. <u>Code</u>, §§40-23-35 and 40-23-85(Repl. 2011), with the vast bulk of the proceeds being deposited into the Education Trust Fund for the education of Alabama's school children.   The proceeds of the motor fuels tax is used for the construction, repair, maintenance and operation of public roads and bridges, thus assuring a safe highway infrastructure for all those who use public roads in Alabama.   <u>Ala</u>. <u>Code</u> §§40-17-13 and 40-17-222.

## III.   **Course of Proceedings Below**

CSX Transportation Inc. ("CSXT"), filed this suit seeking to enjoin Defendants-Appellees, Alabama Department of Revenue and Julie P. Magee, Commissioner of the Alabama Department of Revenue (hereinafter collectively referred to as "Department"), and all those acting in concert or participation with them, from assessing, levying, or collecting sales and use tax on CSXT's purchase or use of diesel fuel.  (Complaint, Doc.1)  Subsequent to this filing, CSXT filed a motion for preliminary injunction asking the District Court to preliminarily enjoin

the Department and all those acting in concert or participation with them from assessing, levying, or collecting sales and use tax on CSXT's purchase or use of diesel fuel.  (Doc. 5).  The District Court issued a preliminary injunction in favor of CSXT.  (Doc. 14).

Subsequent to the issuance of the District Court's preliminary injunction, this Court issued its opinion in Norfolk Southern Ry. Co. v. Alabama Department of Revenue, 550 F.3d 1306 (11th Cir. 2008).  In Norfolk Southern, this Court considered an identical challenge by Norfolk Southern Railway to the sales and use tax on diesel fuel under the 4-R Act and ruled in favor of the Department.  In so doing this Court reasoned that the 4-R Act did not give railroads the right to challenge a system of tax exemptions granted to other taxpayers. Id. at 1315-16.

Accordingly, immediately following the issuance of the Norfolk Southern opinion by this Court, the district court in the instant case *sua sponte* entered an order on December 16, 2008, dissolving the preliminary injunction previously entered and dismissing the case, citing Norfolk Southern as dispositive.  (Doc. 22).

In CSXT's subsequent appeal to this Court, this Court affirmed the district court's dismissal of the case.  See 350 F.Appx. 318 (11th Cir. 2009).  The United States Supreme Court granted CSXT's petition for *writ of certiorari*. The majority reversed this Court's opinion in Norfolk Southern and remanded this case for further proceedings consistent with the Supreme Court's decision, specifically to

determine whether the State of Alabama actually discriminated against CSXT.  <u>See</u>

<u>CSXT Transportation</u> 131 S.Ct. at 1107, n. 5.  The Court specifically declined to

"consider any issues concerning whether these exemptions actually discriminate

against CSX." <u>Id.</u> Noting that Alabama had "raised two such issues in this Court,"

the majority stated that it would "leave these and all other issues relating to

whether Alabama actually has discriminated against CSX to the trial court on

remand to address as and when it wishes." <u>Id.</u>

Justice Thomas and Justice Ginsburg issued a separate opinion that is

relevant for present purposes. Although they nominally styled their opinion a

"dissent," they actually espoused a theory that the majority opinion would allow

this Court to adopt on remand. On the question squarely presented to the Supreme

Court, these two justices actually agreed with the majority that "a scheme of tax

exemptions" is potentially subject to challenge under the 4-R Act. <u>Id.</u> at 1115

(Thomas, J., dissenting). But they wrote separately because whereas "[t]he

majority's holding stop[ped]" with that proposition, they "would go on" and

address the merits of CSX's discrimination claim. <u>Id.</u> On that claim, Justices

Thomas and Ginsburg would have held "that, to violate §11501(b)(4), a tax

exemption scheme must target or single out railroads by comparison to general

commercial and industrial taxpayers." <u>Id.</u> They noted that "parts of the majority's

discussion appear to question this standard, but the Court's "limited holding does

not foreclose it." Id. Justices Thomas and Ginsburg reasoned that "CSX cannot prove facts that would satisfy that standard in this case." Id. And they concluded that under the majority decision, Alabama "remain[ed] free to argue—and lower courts to hold—that complaints like CSX's should be dismissed for failing to state a 'discriminat[ion]' claim under §11501(b)(4) when they do not allege that railroads are targeted or singled out compared to commercial and industrial taxpayers generally." Id. at 1118.

Based on the majority opinion, this Court vacated the District Court's dismissal of the case, and remanded the case for proceedings consistent with the Supreme Court's Opinion. See 639 F.3d 1040 (11th Cir. 2011).

The District Court again preliminarily enjoined the tax (Doc. 35). Accepting stipulations from the parties, the District Court subsequently conducted a trial on the merits to resolve the remaining factual disputes. At trial, the District Court heard testimony from Vickie J. Friedman, CSX's director of sales and uses taxes; Dr. Richard R. Mudge, CSX's expert; Derrick Stephen DuBose, the Department's Manager of the Motor Fuel Section; Jay Starling, the Department's Assistant Director of the Motor Vehicle Division; and Joe Walls, the Department's Director of the Sales and Use Tax Division.

At the conclusion of the trial, the District Court issued a comprehensive opinion determining that the Department did not discriminate under the 4-R Act.

(Opinion, Doc. 71).  Thus, the District Court became the third court to determine that Alabama's tax on diesel fuel does not discriminate against railroads in violation of the 4-R Act.  See Burlington Northern Santa Fe Railway Company v. H.E. Monroe, Commissioner of Revenue of the State of Alabama, Civil Action No. 97-D-1754-N, slip op. (M.D. Ala. Aug. 19, 1998);[4] Norfolk Southern Ry. Co. v. Alabama, No. 2:08-cv-00285-HGD (M.D. Ala. April 9, 2008).[5]   In   reaching   its decision, the district court made three important findings.

First, as noted above, the court found that Alabama's system did not "discriminate" against railroads, as a factual matter, because they would have paid more if they had been subject to the Motor Fuels Tax.  (Opinion, Doc. 71, p. 23-24).

Second, the court found that CSXT could not colorably claim that Alabama's system "discriminates" based on how the State of Alabama spends its tax revenues from these various taxes. The court noted that the 4-R Act provides "no limitation or instruction for a state or locality's spending of the property tax

---

[4] In Monroe, the district court considered only Alabama sales and use taxes and after a thorough analysis, determined that as a generally applicable tax, the Alabama sales and use tax did not discriminate against railroads in violation of the 4-R Act.

[5] The district court in Norfolk Southern utilized an analysis of taxes on diesel fuel, whether labeled motor fuels tax or sales and use tax to determine that Alabama's tax scheme "results in roughly equal treatment" as compared to the rail carriers' competitors. Slip Op. at 32. Because this Court affirmed that decision on different grounds, neither this Court nor the Supreme Court commented on the magistrate judge's holding on the merits.

revenues", and therefore the court refused to read into subsection (b)(4) any directive regarding a state's spending of revenue from "another tax" that it collects from rail carriers. . . .  (Opinion, Doc. 71, p. 26).  Accordingly, the District Court held that CSXT did not prove discrimination, as mandated by the Supreme Court, and that the Department sufficiently demonstrated "that rail carriers are not unjustifiably disfavored as it relates to the purchase and use of diesel fuel," and therefore, the district court found no discrimination under the 4-R Act.  (Opinion, Doc. 71, p. 33).

Third, the court found that CSXT had failed to satisfy its burden of showing "discriminat[ion]," as a factual matter, with respect to the exemption granted to interstate barges. The court noted that CSXT had presented no evidence of the amount of freight that was shipped by water carriers in interstate or foreign commerce. (Opinion, Doc. 71, p. 30-31). Moreover, the court noted that CSXT had failed to show that the exemption was not justified, and thus discriminatory, because CSXT had not established that "eliminating Alabama's diesel tax exemptions for interstate/foreign water carriers would survive commerce clause scrutiny." (Opinion, Doc. 71, p.31).

This appeal followed.

IV.    **Standard of review**

The District Court conducted a bench trial where both testimony was taken

12

and undisputed facts were presented. The District Court then applied the law to all facts, both disputed and undisputed. Therefore, upon appellate review, this Court reviews the trial court's findings of fact for clear error and its conclusions of law *de novo*. See <u>Cumulus Media, Inc. v. Clear Channel Commc'ns, Inc</u>. 304 F. 3d 1167, 1171-72 (11th Cir. 2002).

## SUMMARY OF THE ARGUMENT

Congress' purpose in adopting the 4-R Act was not to grant railroads preferential treatment, but to "remedy discrimination against the railroads and place them on equal playing field with other state taxpayers." See Atchison, Topeka, and Santa Fe Ry. v. State of Ariz., 78 F. 3d 438, 442 (9th Cir. 1996), (ASTF) (citing Ogilvie v. State Board of Equalization, 657 F.2d 204, 210 (8th Cir. 1981) cert. denied 454 U.S. 1086, 102 S.Ct 644 (1991)).  Therefore, a tax will only be discriminatory under (b)(4) of the 4-R Act "if it imposes a proportionately heavier tax on railroading than on other activities."  ASTF at 441 (quoting Burlington N.R.R. v. City of Superior, 932 F.2d 1185, 1187 (7th Cir. 1991)).

The sale or consumption of petroleum products in Alabama is generally subject either to the various excise taxes imposed by Title 40 Chapter 17 of the Alabama Code ("motor fuels tax"), or to sales and use taxes imposed by Title 40, Chapter 23 of the Alabama Code ("sales and use tax").  Fuel subject to the motor fuels tax under Title 40, Chapter 17 is not subject to sales and use tax under Title 40, Chapter 23.  Because the purchase and consumption of dyed diesel fuel by railroads is specifically exempt from the motor fuels tax, railroads are subject to the sales and use tax. See Ala. Code §40-17-2(1).

In CSX Transportation, Inc. v. Alabama Dept. of Revenue, 131 S.Ct.1101 (2011), the Supreme Court reversed this Court's decision, (350 F. Appx. 318) and

14

remanded this case for further proceedings consistent with its opinion, i.e., to determine whether the State of Alabama actually discriminated against Appellant CSX Transportation Inc., in regards to its purchase and use of diesel fuel, a matter the Supreme Court left specifically to the Trial Court "to address as and when it wishes."  <u>See</u> <u>CSX Transportation</u> at 1101 n.5.

After a trial on the merits, the district court did as the Supreme Court mandated and in a clear, comprehensive, well–researched and well-reasoned opinion found no violation of the Railroad Revitalization Regulatory  Reform Act ("4-R Act"), codified at 49 U. S. C. §11501.

## ARGUMENT

This Court should affirm on the well-reasoned opinion of the District Court. The Supreme Court found only that it was conceivable that a system of tax exemptions could be actionable under the 4-R Act. The Court expressly left "all other issues relating to whether Alabama actually has discriminated against CSX to the trial court on remand to address as and when it wishes." CSX Transportation, 131 S.Ct. at 1107, n.5. The Court also noted that the question it was leaving to the District Court would "raise knotty questions about whether and when dissimilar treatment is adequately justified." Id. at 1114. The District Court has decided that "knotty" question, and its resolution is bound up in eminently sound factual findings that CSXT cannot challenge on appeal. In addition, as explained below, even if there were reason to question the District Court's reasoning—and there is not—the judgment below would be justified by the eminently sound alternative theory of the meaning of "discriminat[ion]" under the 4-R espoused by Justices Thomas and Ginsburg in their separate opinion.

## I. THE DISTRICT COURT CORRECTLY FOUND THAT CSXT DID NOT ESTABLISH THAT ALABAMA'S SALES AND USE TAX DISCRIMINATES AGAINST RAILROADS BECAUSE OF THE SEPARATE EXCISE TAX IMPOSED ON MOTOR CARRIES AND THE LACK OF EVIDENCE REGARDING WATER CARRIERS.

As an initial matter, the District Court correctly found that the Sales and Use Tax does not "discriminate[]," for 4-R Act purposes, because CSXT had not shown

that the system benefits its competitors or put it at a competitive disadvantage.

Originally passed in 1976, the 4-R Act was enacted to restore financial stability to the railroad system of the United States, <u>Department of Revenue v. ACF Indus., Inc.</u>, 510 U.S. 332, 336, 114 S. Ct. 843, 846 (1994). The law states, in pertinent part:

> (b)  The following acts unreasonably burden and discriminate against interstate commerce, and a State, subdivision of a State, or authority acting for a State or subdivision of a State may not do any of them:
>
> (1)  Assess rail transportation property at a value that has a higher ratio to the true market value of the rail transportation property than the ratio that the assessed value of other commercial and industrial property in the same assessment jurisdiction has to the true market value of the other commercial and industrial property.
>
> (2)  Levy or collect a tax on an assessment that may not be made under paragraph (1) of this subsection.
>
> (3)  Levy or collect an ad valorem property tax on rail transportation property at a tax rate that exceeds the tax rate applicable to commercial and industrial property in the same assessment jurisdiction.
>
> (4)  Impose another tax that discriminates against a rail carrier providing transportation subject to the jurisdiction of the Board under this part [49 USCS §§ 10101 et seq.].

49 U.S.C. § 11501.

This Court has held that subsection (b)(4) is "intended as a catchall provision to prevent discriminatory taxation of a railroad carrier by any means." <u>Alabama Great Southern R.R. Co. v. Eagerton</u>, 663 F.2d 1036, 1040 (11th Cir. 1981), (<u>citing</u> <u>Ogilvie v. State Board of Equalization</u>, 657 F. 2d 204, 210 (8th Cir.

1981)).

Nevertheless, as the Eighth and Ninth Circuit Court of Appeals have properly recognized, Congress' purpose in adopting the 4-R Act was not to grant the railroads preferential treatment. It was instead to "remedy *discrimination against the railroads and place them on an equal playing field with other state taxpayers*". See <u>Atchison, Topeka, and Santa Fe Ry. v. State of Ariz.</u>, 78 F.3d 438, 442 (9th Cir. 1996) (hereinafter "ATSF") (emphasis added). This purpose is reflected in the Association of American Railroad's proposed antidiscrimination tax bill, which served as the basis for the 4-R Act. That bill stated:

> This proposed antidiscrimination tax bill, which would be available to all common carriers engaged in interstate commerce, has the obvious merit of insuring that such carriers would receive equal treatment with other taxpayers subject to the same tax rates <u>in accordance with applicable State law</u>. The proposal in no way alters the freedom of the State to tax its taxpayers as in its discretion it deems best, so long as such carriers are accorded equal tax treatment with other taxpayers.
>
> <u>Ogilvie</u> at 207 n. 3 (emphasis supplied) (<u>quoting</u> S. Rep. No. 445, 87 Cong., 1st Session 465-466 (1961)).

Therefore, a tax would be discriminatory under subsection (b)(4) of the 4-R Act "if it imposes a proportionately heavier tax on railroading than on other activities." <u>ATSF,</u> 78 F. 3d at 441 (<u>quoting</u> <u>Burlington N.R.R. v. City of Superior</u>, 932 F.2d 1185, 1187 (7th Cir. 1991)). And as the Supreme Court noted in this very case, a tax can be deemed unlawfully discriminatory under the Act only if it "'fail[s] to treat all persons equally when *no reasonable distinction* can be found between

18

those favored and those not favored.'"  CSX Transportation, 131 S.Ct. at 1108 (quoting Black's Law Dictionary 534 (9th ed.2009)) (emphasis added).

In order to determine whether unlawful discrimination exists for the purposes of the 4-R Act, the court must consider whether similarly situated taxpayers pay the tax. Courts have spoken of this analysis in terms of a so-called "comparison class."  In other words, to determine whether a tax discriminates against a railroad in violation of the 4-R Act, a court must determine what class of taxpayers the railroads are to be compared.  See Union Pac. R. R. Co. v. Minn. Dep't of Revenue, 507 F. 3d 693, 695 (8th Cir. 2007).  The court then must consider whether, as the Supreme Court has put it, there is "a reasonable distinction" to be made between the entities within the comparison class. Here, this means considering the excise tax structure that applies to the subject of the tax (use or consumption of diesel fuel) as compared to railroads and their competitors.

CSXT has argued repeatedly that the focus of this case should be on upon the sales and use tax only. It demands that this Court ignore Alabama's tax structure that also imposes a tax on the same taxable event for motor vehicles, but merely labels it differently, here as a motor fuels tax.  This view is an attempt to misdirect attention away from the logically proper analysis required under the 4-R Act:  whether the attendant tax on purchases of diesel fuel, regardless of its label, results in tax discrimination. Another way of putting the same point, as the

Supreme Court has explained, is that differences in tax treatment are not discrimination if they are "adequately justified." <u>CSX Transportation,</u> 131 S.Ct. at 1114. If the State's reason for exempting a competitor is that competitor's payment of a comparable tax, the difference in treatment will be "adequately justified" and thus not, for 4-R Act purposes, "discrimination."

Where a federal question is involved, a federal court is not bound by the label a State attaches to a tax or the character ascribed to the tax by state law. The federal court must determine for itself the true nature of the tax by ascertaining its operation and effect.    See <u>e.g.</u> <u>Schuylkill Trust Co. v. Commonwealth of Pennsylvania</u>, 296 U.S. 113, 56 S. Ct. 31 (1935); <u>see</u> <u>also</u> <u>Lawrence v. State Tax Commission</u>, 286 U.S. 276, 280, 52 S. Ct. 556, 557(1932) (Court concerned only with a tax's practical operation, not its precise definition of descriptive words); <u>also</u> <u>Lunding v. New York Tax Appeals Tribunal</u>, 522 U.S. 287, 297, 118 S. Ct. 766, 774 (1998) (When the question is whether a tax imposed by a State deprives a party of rights secured by the Federal Constitution, the Court must regard the substance, rather than the form, and the controlling test is to be found in the operation and effect of the law as applied and enforced by the State).

There is nothing in the 4-R Act that requires a court, evaluating whether a state tax results in tax discrimination against a railroad, to ignore a tax structure that imposes a tax on the same taxable event (the use and/or consumption of a

gallon of diesel fuel) but merely labels the tax differently.  Instead, the 4-R Act requires a determination of whether the attendant tax on purchases of diesel fuel, regardless of its label, results in tax discrimination. Railroads, despite being part of the general class of taxpayers subject to a sales tax on their diesel fuel purchases,[6] suffer no tax discrimination when compared to motor vehicle carriers, who themselves pay a differently labeled, and higher, excise tax (motor fuels excise tax) on their purchases of diesel fuel.   Furthermore, because CSXT failed in its burden to establish the amount of freight attributable to interstate water carriers, the District Court found that CSXT failed to satisfy its burden of establishing a discriminatory effect as to those carriers.

## A.   CSXT DID NOT SHOW THAT ALABAMA'S TREATMENT OF MOTOR CARRIERS AMOUNTED TO UNLAWFUL DISCRIMINATION.

As an initial matter, the exemption granted to motor carriers is not unlawful discrimination under the 4-R Act. As the District Court explained, the difference in treatment is adequately justified by the fact that motor carriers must pay the more substantial Motor Fuels Tax.

In light of the limited nature of the comparison class here, the District Court persuasively explained why CSXT's reliance on Eighth Circuit precedent, for the

---

[6] All taxpayers of the State of Alabama, who do not pay the motor fuel tax, and are not exempt from the sales and use tax by statute, pay the 4% general rate of sales and use tax on purchases of diesel fuel.  Ala. Code § 40-23-2(1).

proposition that the Motor Fuels Tax is irrelevant, is misfounded.  (CSXT pretrial brief, Doc. 61; CSXT Post-trial brief, Doc. 68).  CSXT cites <u>Burlington Northern Santa Fe Ry. Co. v. Lohman</u>, 193 F.3d 984 (8th Cir.1999), and its progeny to support the contention that the entire tax structure of a state should not be evaluated in determining whether discrimination under the 4-R Act has occurred.  In <u>Lohman</u>, the Eighth Circuit Court of Appeals held that only sales and use taxes should be taken into account to determine if those sales and use taxes being paid by the railroads were discriminatory. But the Court offered no persuasive analysis.  <u>Lohman,</u> 193 F.3d at 986.  Instead, the Court simply quoted the case of <u>Trailer Train Co. v. State Tax Comm'n</u>, 929 F.2d 1300, 1303 (8th Cir. 1999), as justification for declining to consider Missouri's tax structure.  <u>Lohman,</u> 193 F.3d at 986.

But the <u>Lohman</u> reasoning does not work here, for two reasons.

**1.    The precedents on which CSXT relies do not persuasively support a refusal to consider other taxes.**

First and perhaps most important, the District Court adequately distinguished the reasoning of the cases on which CSXT relies. In the Fifth Circuit case of <u>Kansas City Southern Ry. v. McNamara,</u> 817 F. 2d 368 (5th Cir. 1987), upon whose logic <u>all the precedents that CSXT now cites </u>rest, the court considered a 2% tax that Louisiana imposed on gross receipts of "public utilities," including

"railroads and railways, sleep cars, motor bus lines, motor freight lines, express companies, telephone companies, telegraph companies, boat or packet lines, and pipe lines." McNamara, 817 F.2d at 370.    The court found that this tax discriminated against rail carriers utilizing the comparison class of all "other commercial and industrial taxpayers." Id. at 375.  In so doing, the court refused to consider 'the overall tax burden of the railroads and to compare that burden with all other commercial and industrial taxpayers," such a large comparison class would impose substantial difficulties on a court.    Id. at 375-377.  However, as noted by the district court in the instant case, the Lohman line of cases adopted a much smaller comparison class for determining whether a  state's tax structure discriminates against rail carriers, that of the competitive mode class.  See Lohman 193 F.3d at 984; Union Pacific at 695; Kansas City Southern Railway Co. v. Bridges, 2007 WL 977552 (W.D. La., Mar.30, 2007) at *7; (Opinion, Doc. 71 at 19).  Thus, the district court noted a 'significant fallacy with the Lohman cases' reliance on McNamara for the proposition that courts should refuse to analyze a state's entire tax scheme." (Opinion, Doc. 71 at 18-19).  Because the parties agreed on a much smaller class below, the District Court, wisely, refused to blindly adopt McNamara's conclusions. (Opinion, Doc. 71 at 19).

More to the point, two previous districts courts in Alabama have interpreted Alabama law and found no discrimination under the 4-R Act. In Norfolk Southern

Railway Co. v. Alabama, No. 2:08-cv-00285 – HGD (N.D. Ala.  April 9, 2008),

Magistrate Judge Davis correctly applied and analyzed in detail the case law and held

that not only did rail carriers not pay a disproportionate amount of taxes,  but that

Alabama's tax scheme "results in roughly equal treatment" as compared to rail

carriers' competitors.  Slip Op. at 32 (Addendum A).  It is important to note that the

United States Supreme Court did not comment on Magistrate Judge Davis' holding

on the merits but instead only held that rail carriers could challenge state sales and

use taxes under the 4-R Act.  See CSX Transp., Inc. v. Alabama Dept. of Revenue,

131 S. Ct. 1101 (2011).

       In the case of Burlington Northern Santa Fe Railway Company v. H.E.

Monroe, Commissioner of Revenue of the State of Alabama, Civil Action No. 97-

D-1754-N, slip op. (M.D. Ala. Aug. 19, 1998), the district court ruled in favor of

the Department on almost identical issues as those raised by CSXT in the instant

case.  In Monroe, as in the instant case, the District Court analyzed whether the

Alabama sales and use tax imposed on railroads discriminates against railroads in

violation of the Railroad Revitalization and Regulatory Reform Act of 1976, 49

U.S.C. §11501 ("4-R Act").   The District Court found that as a generally applicable

tax, the Alabama sales and use tax did not discriminate against railroads in violation

of the 4-R Act.  Monroe pp. 22-25 (Addendum B).  In reaching this holding, the

District Court devoted seven pages to an analysis of Alabama's excise tax structure

pertaining to fuel and recognized that certain industries and entities which were the railroads' competitors were exempt from sales and use tax, namely motor carriers, water carriers and air carriers, but the fact that the State of Alabama's tax structure allowed for certain exemptions, which did not include railways, did not result in discriminatory treatment of the railways in violation of the 4-R Act. Monroe pp. 2-8, 22-25 (Addendum B).

While the District Court's opinion in Monroe stated that only the sales and use tax was evaluated in determining that the sales and use tax structure was not discriminatory, the inference can certainly be made that the district court's extensive analysis of Alabama's entire excise tax structure figured prominently in the ultimate holding.

**2.      The text of the 4-R Act, and the Supreme Court's decision in this case, are contrary to CSXT's suggestion that the Court should decline to consider the Motor Fuels Tax.**

Moreover, CSXT's suggestion that this Court ignore the Motor Fuels Tax is inconsistent with the Supreme Court's decision in this case. The Supreme Court found that Alabama's sales and use tax constitutes "another tax" for purposes of the 4-R Act, and, as such, CSXT may raise a §11501(b)(4) challenge to the various exemptions that Alabama's tax scheme grants. CSXT Transportation, 113 S. Ct. at 1114.  The Court specifically left "all other issues relating to whether Alabama

25

actually has discriminated against CSX to the trial court on remand to address as and when it wishes." Id. at 1107 n. 5.

The Supreme Court found that an allegation of discrimination under the 4-R Act inherently allows the party charged with discrimination to justify its differential treatment, "whether the railroad will prevail-that is, whether it can prove the alleged discrimination-depends on whether the State offers a sufficient justification for declining to provide the exemption at issue to rail carrier." Id. at 1109-1110 n.8. The Court acknowledged "inquiry into discrimination may pose difficulties. . . . Discrimination cases sometimes do raise knotty questions about whether and when dissimilar treatment is adequately justified". Id. at 1114. However, "Congress has directed the federal courts to review a railroad's challenge; and in either case, we would flout the congressional command were we to declare the matter beyond us." Id.

Thus, as the District Court found, the CSX Transportation language, and indeed the language of the 4-R Act itself, rejects CSXT's suggestion that district courts avoid considering the extent and purpose of an exemption not available to rail carriers, but available to comparative modes of transportation, because such exercise "is too difficult and expensive to evaluate." Lohman, 193 F.3d at 986 (citations and quotation marks omitted). Accordingly, the District Court correctly found that the Supreme Court in CSX Transportation mandated that a court must

26

do the analysis and ascertain whether the state adequately justifies the sales and use tax exemptions for rail carriers' principal competitors.  (Opinion, Doc. 71, p. 22). The only way to answer that question is to analyze rail carriers' competitors in all "relevant respects." (Opinion, Doc. 71, p. 22).

The issue in this case is discrimination.  Specifically, the issue is whether the State of Alabama discriminates against rail carriers with regard to the purchase, use or consumption of diesel fuel used to propel locomotives. Thus, the 4-R Act requires a determination of whether the attendant tax on purchases of diesel fuel, regardless of its label, results in tax discrimination.  Therefore, the proper analysis to determine discrimination is to look at the taxable event (the purchase, use or consumption of diesel fuel) and the tax that applies, regardless of its label.    An evaluation of the operation and effect of the relevant excise taxes, regardless of their descriptive labels, paid on the purchase and consumption of diesel fuel by the railroads and their competitors can logically and easily be reviewed by looking only at the applicable excise tax each party is subject to per gallon of diesel fuel, a very simple analysis.

CSXT reasons that because they must pay the so-labeled "sales" or "use" excise tax and their direct competitors are subject to the "motor fuels" excise tax, CSXT suffers tax discrimination simply because of a label.   The sale or consumption of petroleum products in Alabama is generally subject either to the

various excise taxes imposed by Title 40 Chapter 17 of the Alabama Code ("motor fuels tax"), or to sales and use taxes imposed by Title 40, Chapter 23 of the Alabama Code ("sales and use tax").  Fuel subject to the motor fuels tax under Title 40, Chapter 17 is not subject to sales and use tax under Title 40, Chapter 23. Because the purchase and consumption of diesel fuel by railroads is not subject to motor fuels tax, railroads are subject to sales and use tax.

Under the Fourteenth Amendment to the United States Constitution, a state is free to select the subjects of taxation and to grant exemptions, with neither due process or equal protection imposing upon a state any rigid rule of taxation. Carmichael v. Southern Coal & Coke Co., 301 U.S. 495-509, 57 S.Ct. 868, 872 (1937).  Further, it is well-settled that a state legislature is not bound to tax every member of a class or none.  Id.  Exemptions from taxation are to be strictly construed against the exemption and in favor of the right to tax, and no personal property is to be exempted unless the intention to exempt such personal property clearly appears in some statute or constitutional provision.  Brundidge Milling Co. v. State, 45 Ala. App. 208, 228 So.2d 475 (1969).   Alabama law provides a few narrow, specific exemptions to both motor fuel taxes and sales and use taxes.   See Title 40, Chapter 17 and Title 40, Chapter 23 of the Ala. Code.  However, it is important to note that simply because a taxpayer may receive an exemption from one excise tax does not mean that they are not taxed under a differently labeled excise tax on the exact

same underlying transaction.

In Alabama, diesel fuel is taxed by how it is used, either on-road or off-road. (Tr., Doc 65, p. 57, lines 1-3, DuBose testimony)[7].  On-road motor carriers, or truckers, must use clear diesel fuel and thus, are subject to the motor fuels tax imposed by Title 40, Chapter 17 of the Alabama Code. Rail carriers, or railroads, because they travel off-road and use and consume dyed fuel, are specifically exempt from the motor fuels tax if they pay the sales tax on dyed diesel fuel.   See Ala. Code §40-17-2(1); (Tr., Doc. 65 p. 57, lines 4-17, DuBose testimony). Instead, railroads are subject to the sales and use tax imposed under Title 40, Chapter 23 of the Alabama Code.   Water carriers are subject to Alabama sales and use taxes on purchases of fuel used for intrastate transportation purposes.  (Tr., Doc. 65 p. 86, lines 6-8, Walls testimony).[8]  The exemption from sales tax requires that a vessel travel to a foreign port to be deemed to be engaged in international or interstate commerce.  See State Department of Revenue v. Orange Beach Marina, Inc., 669 So. 2d 1279 (1997).  See also Ala. Code §§ 40-17-2(1) and 40-17-220(e) (motor carriers-motor fuels tax), 40-23-4(a)(10)(water carriers-sales tax) and 40-23-62(12) (water carriers-use tax); (Tr., Doc 65 p. 86, lines 18-25, p. 87, lines 1-8, Walls testimony). The Department is prohibited from taxing the intrastate portion of the trip, if any part of the trip was interstate.   See Dept. of Revenue v.

---

[7] The testimony of Derrick Stephen DuBose is included as Addendum C.
[8] The testimony of Joe Walls is included as Addendum D.

Midstream Fuel Serv., 521 So. 2d 75 (Ala. Civ. App. App. 1988); (Tr., Doc 65 p. 86, lines 9-17, Walls testimony).

Additionally, motor carriers using dyed fuel for off-road purposes, such as to fuel their refrigeration units, or to fuel their engines when they operate exclusively "off the highway," are subject to the same sales and use tax on the purchase and consumption of diesel fuel as the railroads.  Examples of "off the highway" use include motor vehicles operating exclusively in a coal pit, highway construction site closed to public use, or on private property within the confines of a plant. See Ala. Admin. Code r. 810-8-1-.17, attached as Addendum E, and (Tr., Doc. 65 p. 58, lines 6-22, DuBose testimony; Tr., Doc 65 p.85, lines 17-25, p. 86, lines 1-5 Walls testimony).  In fact, all taxpayers of the State of Alabama, who do not pay the motor fuels tax, and are not exempt by statute, must pay the 4% general rate of sales and use tax on purchases of diesel fuel, as well as any other purchase, whether it be for toothpaste, clothes, food, or any other tangible personal property. See Ala. Code §40-23-2(1); (Tr., Doc 65 p. 81, lines 20-25, p. 82, lines 1-12 Walls testimony).

Importantly, CSXT's contentions are not black and white.  Motor carriers, arguably the major competitor to railroads, pay motor fuels tax on its purchases of clear on-road diesel fuel.  See Ala. Code § 40-17-2(1).  To avoid double taxation, the motor carriers are then, and only then, exempt from sales tax as fuel subject to

the motor fuel excise tax is not "subject to any other excise tax levied by the state." Id. On the other hand, as argued above, motor carriers using dyed fuel for off-road purposes, either in refrigeration units, or for "off the highway" use are subject to the sales and use tax levy. See Ala. Code § 40-17-2(1). The same applies for intrastate water carriers. See Ala. Code § 40-23-4(a)(10); 40-23-62(12).

Motor carriers incur a levy of 19 cents per gallon for diesel fuel (motor fuel excise tax), regardless of the price paid per gallon. See Ala. Code §§40-17-2(1) (13 cents per gallon) and 40-17-220(e) (6 cents per gallon). The railroads, however, being subject to the generally applicable sales and use tax are exempt from the motor fuels tax and instead pay 4% of the gross proceeds per gallon of diesel fuel purchased, used, or consumed. See Ala. Code § 40-23-2(1).

Indeed, the District Court found, based on the evidence presented, when comparing the tax rate imposed by Alabama's 4% sales and use tax (rail carriers) and Alabama's 19 cent per gallon excise tax (motor carriers), the motor carriers actually pay a higher rate. (Opinion, Doc. 71, p. 23 citing Tr. Doc 65, at 83-85, Def. Trial Exh. 1). Even when factoring in the local sales and use taxes paid on diesel fuel, based on CSXT's own evidence, the district court found that rail and motor carriers paid similar rates per gallon of diesel fuel from January 2007 through December 2009, while from November 2007 through November 2008 and November 2009 through December 2009 rail carriers paid more than motor

carriers, but motor carriers paid more per gallon in January 2007 through October 2007 and December 2008 through October 2009. (Tr. Doc 65, at 30-31; Pla. Trial Exh.1).  Additionally, the district court noted that these calculations failed to take into account local motor fuels taxes imposed on motor carriers. (Opinion, Doc. 71, p. 24; Tr., Doc 65, pp. 30-31, DuBose testimony).  Thus, the district court held that the Department offered sufficient justification for the exemption and CSXT failed to meet its burden of proof that it suffered from discrimination.  (Opinion, Doc. 71, pp. 25-25).

3.  **The District Court correctly did not consider the disposition of the proceeds of the sales tax and the motor fuels tax.**

 CSXT's claim that Alabama's tax structure is discriminatory because revenue collected from motor carriers is used to repair the roads and highways of Alabama while CSXT must repair and maintain their privately owned track structures is without merit. CSXT cites the case of <u>West Lynn Creamery, Inc. v. Healy</u>, 512 U.S. 186, 114 S.CT. 2205 (1994), for its contention that the Alabama's tax structure somehow singles out railroads based upon the disposition of the motor fuels and sales tax revenues.  However, in <u>West Lynn</u>, the Supreme Court interpreted a Massachusetts milk pricing order which subjected all fluid milk sold to Massachusetts retailers an assessment, with the entire assessment distributed to Massachusetts dairy farmers as a subsidy, even though most of the milk was

produced out of state.  Id.  The Court found that the pricing order violated the commerce clause as the pricing order effectively imposed a tax on out of state milk producers in violation of the commerce clause.  Id. at 194-196, 114 S. Ct. 2212.

West Lynn simply does not apply in the instant case.  Alabama sales tax and motor fuels tax proceeds are distributed in accordance to state statutes.  The Alabama Legislature has provided that revenues from Alabama's sales and use tax are distributed as allocated in Ala. Code §§40-23-35 and 40-23-85, with the vast bulk of the proceeds being deposited into the Education Trust Fund for the education of Alabama's school children, as well as, funding of colleges and universities in Alabama.  (Tr., Doc 65, p. 87, lines 9-17 Walls testimony).  Revenues from gasoline tax and motor fuel tax are distributed according to Ala. Code §§40-17-13, 40-17-31(c), 40-17-72, 40-17-23, 40-17-222, and 40-17-223, with the majority of the funds going to the Alabama Department of Transportation Public Roads and Bridge Fund. (Tr., Doc. 65 p. 61, lines 17-20, DuBose testimony).   All these distributions are to effect public purposes, and the State is constitutionally and legislatively prohibited from levying and collecting taxes to construct and maintain CXST's privately owned track structures as CSXT implies.  See The Alabama Constitution of 1901, Article IV, §93;  Carmichael v. Southern Coal & Coke Co., 301 U. S. 514, 57 S. Ct. 874 (1937).

In fact, all those who use the highway system in Alabama, including the

railroads, benefit from the motor fuels tax. On cross-examination, CSXT's expert, Dr. Mudge admitted that railroads today could not exist without a viable highway system, and that "[t]he freight movements use the entire network." (Tr., Doc. 65 p. 45, lines 15-25, p. 46, lines 1-17, p. 47, lines 2-5). CSXT's contention that the motor fuels tax provides a competitive advantage for the trucking industry is simply myopic. After listening to the entirely of Dr. Mudge's testimony regarding the motor fuels excise tax, the District Court correctly found that "CSX's contention misses the mark." (Opinion, Doc. 71, pp. 25-26). That factual finding was not clear error.

Furthermore, the 4-R Act provides no textual limitation prohibiting a state from spending tax revenues in any particular way. The District Court thus properly refused to read into subsection (b)(4) any directive regarding the state's spending of "another tax" that it collects from rail carriers. (Opinion, Doc. 71, p. 25-26). The use to which a state puts its tax revenue is irrelevant to the issue of discrimination under the 4-R Act. See Atchison, Topeka & Santa Fe Ry., 78 F. 3d at 438, 443 (9th Cir. 1996); Trailer Train v. State Tax Comm'n, 929 F. 2d at 1303. In addition, the 4-R Act itself "has its roots in equity practice, in principles of federalism, and in recognition of the imperative need of a State to administer its own fiscal operations." Tully v. Griffin, Inc., 429 U. S. 68, 73, 97 S. Ct. 219 (1976).

## II. CSXT FAILED TO PROVIDE EVIDENCE OF A DISCRIMINATORY EFFECT WITH REGARD TO WATER CARRIERS.

Because CSXT cannot establish 4-R Act discrimination as to the motor

carriers, its 4-R Act claims necessarily fail. The only remaining argument it has in its arsenal is that the exemption for interstate water carriers found at <u>Ala</u>. <u>Code</u> §40-23-4(a)(10) discriminates against rail carriers because interstate water carriers pay neither a motor fuels tax nor a sales tax on purchases of diesel fuel. But this argument cannot get off the ground, procedurally. The District Court found that CSXT failed to establish a pertinent record on this point, and that reasonable finding was far from clear error or an abuse of discretion. As the District Court stated, CSXT offered "no evidence regarding an alleged discriminatory effect with regard to water carriers" and thus failed to meet its burden of proof. (Opinion, Doc 71, p. 30-31). While CSXT established the percentage of freight moved intrastate by water carriers, it utterly failed to establish the percentage of freight moved by the *inter*state water carriers exempt from the tax. Nor did CSXT establish that interstate water carriers purchase a meaningful amount of diesel fuel in Alabama, such that the exemption would make a competitive difference. Most importantly, CSXT did not establish that rail carriers carry freight of the same type, size or weight as rail carriers, as to provide meaningful competition. Due to CSXT's failures to create a record on this point the fact finder simply could not "assume a discriminatory effect based solely on CSX's allegations" relating to water carriers (Opinion, Doc 71, p. 31). On that basis alone, CSXT could not establish a claim based on the water-carrier exemption.

## III.  ALTERNATIVELY, CSXT'S CLAIM IS DUE TO BE DISMISSED FOR THE REASONS GIVEN BY JUSTICES THOMAS AND GINSBURG.

The District Court prudently concluded that CSXT had failed to show that the Sales and Use Tax was "discriminatory" because, based on the record created by the parties below, (1) the exemption for the Motor Carriers was adequately justified by the Motor Fuels Tax and (2) CSXT failed to show that the exemption for water carriers is not adequately justified. Those findings were compelled by the record and provide a firm basis for rejecting CSXT's claim in this case. But even if the District Court's findings were erroneous, the District Court's judgment would be due to be affirmed on the alternative, broader theory, espoused by Justices Thomas and Ginsburg, "that, to violate §11501(b)(4), a tax exemption scheme must target or single out railroads by comparison to general commercial and industrial taxpayers." CSX Transportation, 131 S. Ct. at 1115 (Thomas, J., dissenting). As those two justices noted, "CSX cannot prove facts that would satisfy that standard in this case." Id. That is so because there is no indication that the tax system at issue here targets or singles out railroads by comparison to that class.

The District Court did not have to consider that theory below because CSXT could not even establish that Alabama's system discriminated against it as

compared to its competitors. This Court thus need not consider this theory to affirm. This Court "may, nevertheless, affirm a district court's decision to grant or deny a motion for any reason, regardless of whether it was raised below." American United Life Ins. Co. v. Martinez, 480 F.3d 1043, 1059 (11th Cir. 2007). Justices Thomas and Ginsburg represent diverse perspectives on the law, and their theory would be highly likely to pick up three more votes should the issue come before the Supreme Court. And their reasonable theory provides a fully adequate, alternative basis for affirming in this particular case. As they noted, the majority opinion in that case did not foreclose their theory, and States "remain free to argue—and lower courts to hold—that complaints like CSX's should be dismissed for failing to state a 'discriminat[ion]' claim under §11501(b)(4) when they do not allege that railroads are targeted or singled out compared to commercial and industrial taxpayers generally." CSX Transportation, 131 S. Ct. at 1118 (Thomas, J., dissenting). Because CSXT cannot meet that standard, its claims must fail.

## **CONCLUSION**

Therefore, based upon the foregoing, the Department respectfully requests that this Court affirm the district court's order finding no discrimination under the 4-R Act.


Respectfully submitted this the 13th day of November, 2012.


/s/Margaret Johnson McNeill
MARGARET JOHNSON MCNEILL
KEITH MADDOX
Assistant Attorneys General,
State of Alabama and Assistant Counsel,
Department of Revenue
P. O. Box 320001
Montgomery, AL  36132-0001
Telephone:  (334) 242-9690
margaret.mcneill@revenue.alabama.gov
keith.maddox@revenue.alabama.gov

Counsel for Appellees State of Alabama
Department of Revenue and Julie P. Magee,
Commissioner of Revenue

38

### <u>CERTIFICATE OF COMPLIANCE WITH RULE 32(A)(7)</u>

I, Margaret Johnson McNeill, hereby certify that:

1.    I represent Appellees State of Alabama Department of Revenue and Julie P. Magee, Commissioner of Revenue in this appeal.

2.    This brief complies with the type-volume of Fed. R. App. P. 32(a)(7)(B) because:  This brief was prepared in Times New Roman 14-point type, and contains 8,756 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii) and 11th Cir. R. 32-4.

3.    In making this certification I have relied on the word count feature of the word processing software used to prepare this brief.

/s/Margaret Johnson McNeill
MARGARET JOHNSON MCNEILL

Counsel for Appellees State of Alabama
Department of Revenue and Julie P. Magee,
Commissioner of Revenue

## <u>CERTIFICATE OF SERVICE</u>

I, Margaret Johnson McNeill, hereby certify that a copy of the foregoing has been served upon the following parties by United States mail, properly addressed and postage prepaid, on this 13th day of November, 2012.

James W. McBride
Baker, Donelson, Bearman,
Caldwell & Berkowitz, PC
555 Eleventh Street, N. W., 6th Floor
Washington, D.C. 20004

Stephen D. Goodwin
Baker, Donelson, Bearman,
Caldwell & Berkowitz, PC
165 Madison Avenue, Suite 2000
Memphis, TN 38103

J. Forrest Hinton
Baker, Donelson, Bearman,
Caldwell & Berkowitz, PC
Wachovia Tower
420 Twentieth Street North, Suite 1600
Birmingham, AL 35203

Betty Jo Christian
Timothy M. Walsh
Theodore N. Nemeroff
Steptoe & Johnson LLP
1330 Connecticut Ave. N.W.
Washington, D.C. 20036

Louis P. Warchot
Janet L. Bartelmay
Association of American Railroads
425 Third Street, S.W.
Washington, D.C. 20024

/s/Margaret Johnson McNeill
MARGARET JOHNSON MCNEILL
KEITH MADDOX
OF COUNSEL STATE OF ALABAMA

Assistant Attorneys General,
State of Alabama and Assistant Counsel,
Department of Revenue
P. O. Box 320001
Montgomery, AL 36132-0001
Telephone: (334) 242-9690
margaret.mcneill@revenue.alabama.gov
keith.maddox@revenue.alabama.gov

40

## ADDENDUM

A.    Norfolk Southern Ry. Co. v. Alabama, 2:08-CV-00285-HGD (M.D. Ala. April 9, 2008)

B.    Burlington Northern Santa Fe Railway Company v. H.E. Monroe, Commissioner of Revenue of the State of Alabama, Civil Action No. 97-D-1754-N, slip op. (M.D. Ala. Aug. 19, 1998)

C.    Trial Testimony of Derrick Stephen DuBose

D.    Trial Testimony of Joe Walls

E.    Ala. Admin. Code, 810-8-1-.17